# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

MICHAEL ASHFORD : CIVIL ACTION NO. 2:14-cv-0992

VERSUS : JUDGE WALTER

AEROFRAME SERVICES, LLC, ET AL. : MAGISTRATE JUDGE KAY

## REPORT AND RECOMMENDATION

"If this case is an example, the term 'civil procedure' is an oxymoron." *Green v. GTE Cal., Inc.*, 2d Cal. App. 4th, 407, 408, 34 Cal.Rptr.2d 517, 518 (1994), as quoted in *Hernandez v. Results Staffing, Incorporated*, 907 F.3d 354 (5th Cir. 2018).  Before the court is a Motion for Sanctions [doc. 159] filed by defendant Aviation Technical Services, Inc., ("ATS") against parties Michael Ashford ("Ashford"); Roger Porter ("Porter"); and Aeroframe Services, LLC ("Aeroframe); and their attorneys, Thomas A. Filo and Somer Brown of the firm Cox, Cox, Filo, Camel & Wilson, LLP ("the Cox Firm"); Richard T. Haik, Jr. of Morrow, Morrow, Ryan, Bassett & Haik; and Joseph P. Williams, Sr. ("J. Williams), and Richard B. Williams ("R. Williams) of Williams Family Law ("the Williams Firm").  Ashford, Aeroframe, Porter, and all counsel are referred to collectively where necessary as "respondents."  When denoting only respondents Ashford, Aeroframe, and Porter, they are referred to as the "non-ATS litigants" or "non-ATS parties."

These matters have been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636.

# I.
## BACKGROUND

### A.  Factual Background

Aeroframe, a Louisiana Limited Liability Company whose sole principal is and was Porter (and whose name is also occasionally preceded in this ruling with "Porter alter-ego") was a citizen of Louisiana that operated a maintenance, repair, and overhaul ("MRO") facility at the Chennault International Airport located in Lake Charles, Louisiana.  Ashford was an employee of Aeroframe which closed its doors August 9, 2013, without having paid its employees their last wages.

In the fall of 2012 Aeroframe was facing serious financial difficulty and Porter began exploring a partnership, merger, or buyout. Doc. 1; doc. 12. Porter reached a tentative agreement with ATS, a Washington corporation, in which (1) Porter would receive employment with ATS, (2) ATS would acquire the ground lease at Chennault, and (3) ATS would acquire a promissory note executed by Aeroframe in 2005 with EADS, Inc., ("the EADS note").  Aeroframe equipment served as collateral for the EADS note and Aeroframe was in default. *See generally* doc. 1; doc. 45, pp. 2–3.

ATS alleges that, on July 31, 2013, it finalized negotiations to purchase the Aeroframe debt from EADS, sent draft letters of intent to Chennault to secure the ground lease, and offered Porter an employment contract, which he executed and returned the same day. Doc. 1, p. 10. On August 4, however, ATS states that it became aware that Porter was also engaging in acquisition negotiations with competitor AAR Corporation ("AAR"), and that AAR had secured the ground lease with Chennault.[1] *Id.* Pursuant to his new arrangement with AAR, Porter allegedly (later

---

[1] It was subsequently learned that AAR secured the Chennault Lease with the assistance and cooperation of Porter. In a separate lawsuit filed by Porter against AAR, the jury found, and the appellate court agreed, that a condition of Porter's future employment with AAR was that he assist AAR in procuring the lease and he did.  *Porter v. AAR Aircraft Services, Inc.*, 790 Fed.Appx. 708, 710 (6th Cir. 2019).

proved to be fact) entered into an employment contract with AAR.  Porter emailed Aeroframe employees to inform them of the closure of the facility and, on August 9, 2013, Aeroframe released its employees without payment of last due wages. *Id.*; doc. 1, att. 1, p. 4. ATS foreclosed on the EADS note on August 20, 2013, and seized the collateral, i.e. Aeroframe's equipment. Doc. 45, p. 3.

## B. Procedural Background

### 1. State Court Litigation

Ashford filed suit in Evangeline Parish, Louisiana, against Aeroframe for wages, penalties, and attorney fees due under the Louisiana "Last Paycheck Law," La. R.S. 23:631.  Ashford was represented by Cox Firm partner Brown.  Ashford also sued ATS, a stranger to Ashford.  In his suit Ashford claimed that Aeroframe and ATS had negotiated a possible partnership, merger, or buy-out that did not come to fruition.  Thereafter, the complaint suggests, Aeroframe began negotiations with an ATS competitor, AAR.   According to the allegations of the complaint (provided by Porter), all expected negotiations with AAR would result in a "smooth continuation of the MRO business in Lake Charles" providing "adequate funding to cover all outstanding expenses of Aeroframe, including wages."  Doc. 1, att. 1, p. 5.  According to that original complaint, that "smooth continuation" came to an end when ATS, "in an apparent effort to either disrupt the deal altogether and/or force Aeroframe into premature closure and bankruptcy," purchased the outstanding EADS note (on which Aeroframe had already defaulted) and then "foreclosed on that loan and attempted to cease [sic] Aeroframe's assets to cause Aeroframe to go out of business."  *Id.*, pp. 5-6.  Ashford claimed ATS was indebted to him under Louisiana Civil Code Article 2315 for causing him harm (in no specified manner), for intentional interference with the contract between Aeroframe and AAR, and violation of the Louisiana Unfair Trade Practices

Act ("LUTPA"), La. R.S. 41:1401, *et. seq.*, rendering ATS liable to him for wages, past and future, statutory penalties, statutory attorney fees, and costs of the proceeding. *Id.*, pp. 6-8.

Recall that, at this point, all ATS knows is that Ashford, a former employee of Aeroframe, has sued it under the theories set forth above.  It filed a cross-claim against Aeroframe and a third party demand against Porter. Doc. 1, att. 1, p. 41.  There ATS argued that Aeroframe had ceased its operations on August 9, 2013, two weeks before ATS's foreclosure on the Aeroframe debt, and that any damages Ashford had sustained were the fault of Porter and Aeroframe. *Id.*, pp. 45-47 It further argued that Porter and Aeroframe were liable for damages ATS suffered when its efforts to acquire Aeroframe fell through. *Id.*, pp. 47-48.

Porter, appearing in proper person, filed a very sophisticated counterclaim against ATS also claiming tortious interference with business relations with AAR, intentional interference with contractual relations, and unfair trade practices under the Louisiana Unfair Trade Practices Act. *Id.*, pp. 101.  Much later it was learned that Porter's pleading was drafted for him by Filo. Doc. 260, p. 30 (pdf. p. 189).  The following day Aeroframe filed a counterclaim against ATS under theories of intentional interference with contractual relations, tortious interference with business relations, and unfair trade practices under the Louisiana Unfair Trade Practices Act. Doc. 1, att. 1, p. 116.  Aeroframe filed no claim against Porter.  At that time Aeroframe was represented by J. Williams and R. Williams.  Unknown to ATS until much later, the Williams Firm had a very close relationship with the Cox Firm, so close that the Williams Firm required Porter sign a waiver of conflict before it would agree to represent Aeroframe.  Doc. 257, att. 18.

On May 9, 2014, Filo was granted leave by the state court to enroll as counsel for Porter. Doc. 1, att. 1, p. 182.  So at this point in the proceeding in state court, Cox Firm partner Brown was representing Ashford against Porter alter-ego Aeroframe represented by the Cox Firm close

business partner, the Williams Firm.  After ATS makes claims against Aeroframe and Porter, then Porter makes his claim against ATS.  Thereafter Filo, Brown's partner, enrolls to represent him.

In March of 2014 Brown, Filo (yet to enroll for Porter), and Joseph P. Williams travel to Seattle for purposes of deposing principals of ATS.  Filo was the sole inquisitor for all non-ATS litigants at the deposition. *See* Doc. 257, atts. 30-39.  On April 17, 2014, Brown sent the following email to her numerous former Aeroframe employee clients that read as follows:

> For those of you who missed the Aeroframe client meeting on Friday, please allow this to serve as an update and a request for you to execute and return the attached waiver.

> In March we travelled to Seattle and took the deposition of ATS's corporate representatives. Those individuals confirmed that, ***as Roger Porter had previously told us***, ATS came in after knowing that AAR was doing a deal with Aeroframe. It is our belief, now confirmed by undisputed testimony from ATS and Roger Porter, that ***ATS was the cause of Aeroframe's closure*** and the loss of your employment and benefits.

> [Porter] has filed a cross-claim against ATS for his own losses and those of Aeroframe. Aeroframe has retained counsel from Natchitoches [the Williams firm] ***who is working cooperatively with us*** and will not defend against your wage claims. ***In fact, your entitlement to wages, penalties, and attorney's fees will be stipulated to by Aeroframe.***

> [Porter] has approached my partner, Tom Filo, and requested that he[] pursue [Porter's] individual claim against ATS. ***[Porter] has agreed to stipulate in writing that if we represent him, his clients [sic] will be paid first out of any monies that he collects.*** He understands that we will not represent him absent this written agreement.

> However, in order for our firm to get involved on behalf of [Porter], we need each of our employee-clients to sign the attached conflict waiver. Without this signed document from each of you, we cannot assist [Porter] in collecting money FOR YOU.

> If you have any questions, please feel free to call or email me. We need these documents back as soon as possible. ***If you are not willing to enter into this arrangement with us, please contact me so that I can get you in touch with other counsel, but please also be advised that [Porter]'s written stipulation of first payments will only apply to the employees who are represented by this law firm.***

Doc. 257, att. 40.  We refer to this as "the Brown email."  On the basis of this email, the fact that by this point Filo has (from the standpoint of anyone other than non-ATS litigant counsel) inexplicably enrolled to represent Porter (alter-ego for Aeroframe who was sued by Ashford, represented by Filo partner Brown), and the fact that only Filo effectively participated in the Seattle depositions, ATS removed.

### 2.  This Litigation

ATS filed its Notice of Removal that began this proceeding on May 14, 2014.  Doc. 1.  In its notice it quotes the Brown email and alleges that its receipt of the email on April 17, 2014, constituted the "other paper" from which it was first able to ascertain that this case was removable. It argued that we should realign the parties according to their interests such that Aeroframe would be considered a plaintiff.  Doc. 1, p. 5.  It suggested that Ashford's claim against Aeroframe was a mere pretense insofar as Aeroframe was out of business and insolvent at the time of filing.  *Id.*, p. 12.  Receipt of the Brown email made it clear to ATS that Porter had been collaborating extensively with Ashford's attorney.  ATS also pointed to the fact that neither Brown nor Williams asked any questions at all at the Seattle depositions, leaving all the work to Filo who, according to ATS, had obviously been in communication with Porter prior to the depositions.  *Id.*, p. 15.   ATS argued we should ignore the presence of Aeroframe as it was added only as a pretense, that Ashford and Porter were working cooperatively and joined Aeroframe in the litigation only to defeat diversity, and that the parties had clearly come to an agreement as evidenced by the Brown email. *Id.*, 16-18.   Recall that at this point ATS did NOT know of the extensive connections between Brown, Filo, and Porter that we insert above.  ATS only knew what it knew from the information in the email, Filo's active participation in the depositions, and the fact that Filo enrolled for Porter

who, from outward appearance, was adverse to Ashford in that he was the alter-ego (ATS alleged

then) of Aeroframe that had a claim against it by Brown client Ashford.

### a. Motions to Remand

The non-ATS parties filed for remand.  Docs.  2 (Ashford), 5 (Aeroframe), and 3 (Porter).

All three argued vociferously that there was absolutely no cause for us to realign the parties, that

Ashford and Aeroframe were adverse to each other, and we lacked subject matter jurisdiction.  At

the hearing on the motions, Brown, referencing the promises she made to her clients in the email,

stated "I didn't have authority to speak on behalf of Roger Porter.  And there is not one written

settlement agreement, stipulation, nothing indicating that Mr. Porter agrees to what I suggest that

he is agreeing to in my e-mail."[2]  Doc. 44, p. 64.

Nevertheless, we denied the motions.  Doc. 45.  Although we did not find that ATS had

adduced sufficient proof that these parties acted collaboratively since inception of the litigation,[3]

we did find that remand should be denied.  We concluded that the Brown email clearly established

that any conflict between Ashford and Aeroframe had been compromised.  The email informed

Ashford that his "entitlement to wages, penalties, and attorney's fees" would be stipulated to by

Aeroframe if Ashford would waive conflict so that Filo could enroll to represent Porter.  The email

promises that Porter "has agreed to stipulate in writing that if we represent him, his clients [sic]

will be paid first out of any monies that he collects.  ***He understands that we will not represent

him absent this written agreement***."  Insofar as Filo did enroll for Porter we surmised the conflict

between Ashford and Aeroframe must have been at an end.  We said that ***"[w]e must assume that***

---

[2] As we learn later Brown was listed as counsel representing Porter in this matter in their retention agreement.  See discussion at Section I.B(3)(b) below.  For her to say she did not have authority to speak for Porter was dishonest. Her retention agreement also contained a written stipulation that favored the employee plaintiffs, also rendering this statement untrue.

[3] We recommend a reversal of that finding in our Report and Recommendation also issued this date in *Ashford v. Aeroframe* bearing docket number 19-cv-610.  There we recommend denying the Motions to Remand filed in that suit, the second removal of this proceeding by ATS referred to herein as "Ashford 2."

*Ashford's counsel [procured the promised stipulation] insofar as that was one of the underlying elements of Porter's inducement to have Ashford waive [conflict].*"[4]   Doc. 45, pp. 15-16 (emphasis added).  We noted that no evidence of a binding agreement was produced but we had no difficulty concluding it must exist for, "[a]bsent the binding nature of that agreement there would exist irreconcilable conflict" with Brown representing plaintiff and Filo, her partner, representing Porter who is, for all intents and purposes, Aeroframe.[5]  *Id.*, p. 17.

On appeal of our ruling to the district court the non-ATS parties argued clamorously that that there was no settlement, there was no agreement between the parties, there was no writing period.  In brief Aeroframe argued it "*has never entered into a stipulation that Aeroframe would subordinate its claims against ATS to those of Mr. Ashford against ATS*."[6]   Doc. 56, p. 4 (emphasis added).  Ashford, while lambasting this court for foolishly concluding there must have been some sort of an agreement, said "no such settlement exists or has even been contemplated by the parties."  Doc. 48, p. 8.[7]  Porter said:

- "First, despite any assumptions by ATS to the contrary, . . . Porter never entered into a settlement agreement with . . . Ashford or any other plaintiff in this matter.  There is no written settlement agreement and . . . Porter never signed any document confirming any agreement to settle." Doc. 57, p. 1.

---

[4] In the original opinion we said "privilege" when we meant "conflict."

[5] At the time of our original ruling we also did not accept ATS's suggestion that Porter and Aeroframe were one in the same.  Doc. 45, p. 16, fn. 10.  With all that has been uncovered over the five years since that ruling was issued we have no difficulty now concluding that is indeed the case and state this as fact throughout this document before and after this point in our ruling.

[6] To be fair to counsel for Aeroframe, they were unaware of the document signed by Porter for himself and Aeroframe agreeing to pay the claims of the employees.  *See* Doc. 260, p. 86 (testimony of R. Williams).

[7] We find distasteful this type of forceful and false statement (this is just one example – similar forceful and false statements have been made repeatedly throughout this litigation by all non-ATS litigants).  Recall that Brown induced her clients to sign a waiver of conflict so Filo could represent Porter.  In her email telling them they must sign (or seek new counsel) she says "*In fact, your entitlement to wages, penalties, and attorney's fees will be stipulated to by Aeroframe. . . [Porter] has agreed to stipulate in writing that if we represent him, his [sic] clients will be paid first out of any monies that he collects.*"  Doc. 257, att. 40.  But then castigates the court for having the temerity to assume she fulfilled her promise to her client.  It is also difficult to understand why Brown, ostensibly representing Ashford, would so vehemently attack our decision that his claim for wages was resolved.  This latter concern has been the source of the undersigned's questioning several times in this litigation, "who is truly representing the interests of Mr. Ashford?"  As we discuss later it appears that the answer is "no one."

-8-

- "As previously stated, there is no settlement or compromise between any of the parties herein." *Id.* p. 2.
- ". . . Porter did not enter into any settlement with any parties to this litigation." *Id.* p. 2-3.
- "ATS failed to present any evidence of a settlement, because no such settlement exists." *Id.*, p. 6.

And, as we learn later, each of these statements was false.

Our conclusions were accepted by the district court.  Docs. 60, 76.  Then Ashford applied for an interlocutory appeal [doc. 73] but the Fifth Circuit dismissed for lack of jurisdiction.  Doc. 75.  Ashford also filed two Motions for Certification of Question for Appeal or Motion to Make Partial Judgment Final [docs. 63, 77], Aeroframe filed one [doc. 78] and Porter joined Ashford's second motion [doc. 80]. Through these motions the non-ATS parties were seeking finality of the court's ruling on subject matter jurisdiction so that he could immediately bring the issue to the Fifth Circuit.  In the memorandum in support of that motion Brown doubled down on her assertion there was no agreement between the parties when she said "[a]s a preliminary matter and so that the record is clear – there is **no stipulation** between the parties.  . . . [T]he record is (not surprisingly) devoid of any evidence of a stipulation for the simple reason that **one does not exist**." Doc. 63, att. 1, p. 4 (emphasis added).  A second effort at filing an interlocutory appeal was likewise made and rejected also for lack of jurisdiction.  *Id.*  Doc. 84.

### b.  Ashford and Aeroframe Dispositive Motions

This, however, did not stop the non-ATS parties' effort to defeat federal diversity jurisdiction.

Ashford filed a Motion for Summary Judgment against Aeroframe.  Doc. 85.  He sought judgment against Aeroframe for his unpaid wages (two weeks wages totaling $2,640), statutory penalties of ninety days of wages ($23,760), and his attorney fees representing one-third of his recovery ($8,800) for a total of $35,200.  Ashford filed an affidavit attesting to these facts.  *Id.*, att.

3.  Ashford's affidavit also gratuitously, and in aid of the Aeroframe motion filed and discussed below, stipulated that his claim against Aeroframe did not exceed $75,000.

In contravention to Brown's promise made in her email (that Aeroframe, represented by "counsel . . . who is working cooperatively with us [*who would] not defend* against your wage claims" and *who would stipulate* Ashford's "*entitlement to wages, penalties, and attorney's fees*") Aeroframe opposed the motion.  Aeroframe contested no numbers but only argued that it had good reason to shut its doors and not pay the last wages – the nefarious conduct of ATS alleged by all non-ATS litigants – and therefore should not be liable for statutory damages (a defense not available at that time).  It also suggested that Ashford did not prove his right to attorney fees.  Doc. 90.  Aeroframe's "evidence" purporting to establish existence of an issue of fact that would preclude Ashford's request for judgment was an affidavit from Cox Firm client Porter.  Porter's affidavit, however, disputes none of Ashford's numbers; rather, it attests to ATS's nefarious conduct which, according to Porter alter-ego Aeroframe, would relieve it of statutory penalties.[8] Ashford replied correctly noting that the Louisiana Last Paycheck law does not provide for a good faith exception to the penalty provision.[9]  But Ashford also claimed Porter's "self-serving affidavit, which attempts to place sole fault for Plaintiff's losses on ATS, should be disregarded."  Doc. 93. So Brown signs a pleading basically calling her client Porter a liar.

Near the same time Aeroframe filed a Motion to Dismiss against Ashford claiming this court lacked subject matter jurisdiction as citizenship of Ashford and Aeroframe was not diverse and the amount in controversy did not exceed $75,000.  Doc. 102.  Predictably Aeroframe attached

---

[8] *Valentine v. Aeroframe Services, LLC, et. al,* 2013 WL 10835400 (La. Dist. Ct. 14th 9/17/2013) was a lawsuit brought in state court by an Aeroframe employee against the company and Porter.  All parties were represented by counsel not involved in this litigation.  A consent judgment was entered in that matter in favor of Valentine against Aeroframe for Valentine's wages, *penalties*, and attorney fees.  2014 WL 10077424 (La. Dist. Ct. 14th 9/25/2014).
[9] The act has since been amended to allow for a good faith exception for penalties.

as evidence the affidavit Ashford signed supporting his own Motion for Summary Judgment.  In an equally predictable manner Ashford responded by agreeing the court has no subject matter jurisdiction but asking that the matter be remanded rather than dismissed.  Though not a party to this particular dispute, undoubtedly by design, ATS filed an opposition to this motion and characterized Aeroframe's motion as a "farce" claiming "[t]his Motion, and the related Motion for Summary Judgment filed by Ashford, demonstrate undeniably that this Court's finding that realignment was proper based upon the collusion of these parties was not only justified but remains topical."  Doc. 96, p. 1.  It suggests that these two motions were just another attempt by these clearly aligned parties to have this matter remanded.

And the district court agreed with ATS mooting both motions. Doc. 105.  The district court found these motions

> to be nothing more than an attempt to re-litigate previously decided issues. . . . [T]he court has already found that the parties resolved the wage claim. . . . The court came to this conclusion based on a waiver signed by Ashford, which allowed the Cox Law Firm to represent both Ashford and the sole member and CEO of Aeroframe in the exact same litigation.  In an email explaining the waiver, the Cox Law Firm affirmatively stated that Aeroframe would not defend against the wage claims. . . . The opposition filed by Aeroframe is better read as a confirmation of this agreement than an actual opposition to the motion.

Doc 104, pp. 2-3 (footnotes and internal citations to docket omitted).  The district judge then notes quizzically "[w]hy the Cox Law Firm seems intent on putting itself in an ethical noose by continuing to argue that the parties are adverse while also representing Porter and maintaining that Ashford gave informed consent for that representation is puzzling.  The only reasonable conclusion seems to be that the Cox Law Firm is attempting to forum shop . . . ."  *Id.*, pp. 3-4.  Puzzling indeed.

### c.  **ATS Dispositive Motion**

On March 6, 2017, ATS filed a Motion for Summary Judgment seeking dismissal of all claims against it.  Doc. 110.  On March 22, 2017, counsel for ATS wrote to Brown, Filo, Haik, J. Williams, and R. Williams, all respondents to this Motion for Sanctions, to advise counsel of information obtained by ATS that was irreconcilable with the assertions made by Porter in these proceedings.  Doc. 159, att. 4.  This information was obtained by ATS when it investigated a legal proceeding that Porter had brought against AAR in Tennessee[10] where Porter sought relief from nefarious acts he alleged AAR had committed during the same time period and over negotiations involving the Aeroframe facility and its ultimate demise.[11]

The correspondence sets forth the dichotomy of positions propagated by Porter in this litigation versus that he filed in Tennessee.  It notes that the non-ATS litigants in this proceeding argued that ATS's inappropriate dealings with Aeroframe, including ATS's failure to follow through on promises of employment to Porter on his terms and its purchase of and foreclosure on the EADS note, was the cause of Aeroframe's closure and plaintiff's damages.   However, in the Tennessee proceeding Porter stated that he voluntarily closed Aeroframe in order to "pursue a lucrative personal employment contract with AAR," that he "voluntarily forewent the opportunity to enter into an employment contract with ATS" because of AAR's promises, and that a customer's non-payment of invoices was the reason for Aeroframe's shut down and its inability to pay its employees.  Doc. 159, att. 4, p. 2.  ATS also reiterated points made in its Motion for Summary

---

[10] *Porter v AAR Aircraft Services, Inc.*, USDC WDTN, Civil Action No. 15-cv-02780.  That litigation was still pending at the time of this correspondence.

[11] Porter sued AAR in Tennessee claiming AAR had given him a five year employment contract.  A jury verdict awarding him $250,000.00, representing one year salary under the contract, was affirmed by the Sixth Circuit.  *See Porter v. AAR Aircraft Services, Inc.*, 790 Fed.Appx. 708 (6th Cir. 2019).  The appellate court found that the jury's finding that Porter had fulfilled the requirement of a conditional offer of employment he signed August 1, 2013, (the day after he signed an offer of employment with ATS), that requirement being that Porter assist AAR in obtaining the Chennault lease, which he did.

Judgment that render meritless all claims in this litigation.  And the correspondence goes on to state:

> While we would prefer to believe that you as counsel were unaware of Porter's perfidy, we cannot ignore the failure to conduct due diligence once you were made aware in our filings last year of the existence of the Tennessee litigation. All of these indisputable facts are in that record and are not disputed by either Porter or AAR.
>
> Accordingly, pursuant to Federal Rule of Civil Procedure, Rule 11, this letter is a demand that you dismiss all pending litigation and claims against ATS within 21 days of the date of this letter. Otherwise, ATS intends to seek sanctions since the asserted claims and legal contentions are not warranted based on the indisputable facts and existing law. Your factual contentions do not have evidentiary support, and, in fact, are contradicted by Porter's testimony and admissions in the Tennessee litigation.

*Id.*  On April 10, 2017, the Williams Firm moved to withdraw its representation of Aeroframe. Doc. 127.  Remaining counsel chose to persevere.

The court's disposition of the claims of each non-ATS litigant was as follows:

### i.  Ashford's Claims

The district court found that Ashford failed to even mention his Louisiana Civil Code article 2315 claim in opposition to the motion and dismissed it with prejudice.  Doc. 131, pp. 16-18.  Making an *Erie* guess the court concluded that no claim for intentional interference with contractual relations could lie in Ashford's favor as it is unavailable against a corporate entity.[12] The court went further to state that, even if the claim could lie against a corporate entity, Ashford failed to establish any duty that ATS owed to Ashford in ATS's business negotiations with Aeroframe.  *Id.*, pp. 19-20.  And finally with respect to this claim the court found that Ashford failed to provide any evidence of a causal link between ATS's action and closure of Aeroframe

---

[12] Whether such a claim exists in Louisiana law against a corporation remains unanswered; however, the Louisiana First Circuit did state in dictum that "...the tortious interference with contract claim lies only against a corporate officer of a private corporation, *and may not be brought against the corporation/employer itself . . .*" *Hawkins v. Decuir, Clark, and Adams, LLP*, 2017 WL 3528872, *7 (La.App. 1 Cir. 8/16/17) (emphasis added).

Ashford offered no evidence to controvert that of ATS – that the closure was because of the unpaid invoice of the customer.  *Id.*, p. 20.[13]  This point bears repeating:  Ashford failed to come forth with any evidence controverting ATS's positive evidence that the closure of Aeroframe was because of an unpaid invoice from a customer and not because of any alleged nefarious conduct of ATS.

Finally, the court dismissed Ashford's request for relief under LUTPA.  The court noted that, in order to prevail, Ashford would have to prove ATS engaged in conduct that "offends established public policy and . . . is immoral, unethical, oppressive, unscrupulous, or substantially injurious."  *Id.*, p. 21 quoting *Moore v. Goodyear Tire & Rubber Co.*, 364 So.2d 630, 633 (La. App. 2 Cir. 1978) as quoted in *Cheramie Servs., Inc. v. Shell Deepwater Prod.*, 35 So.2d 1053, 1059 (La. 2010).  Further Ashford must prove he suffered an "ascertainable loss that was caused by ATS's use of unfair or deceptive acts or practices."  *Id.* (footnote omitted).  Ashford relied on the information provided to him by Porter about their dealings, but the court rejected the argument that ATS engaged in bad faith dealings in its purchase of the EADS note.  The court noted that no agreement with Aeroframe or Porter prohibited ATS from purchasing the note and, in fact, "Aeroframe actually condoned ATS's communications with EADS . . . ."  *Id.*, p. 24 (footnote

---

[13] As proof of the reason for Aeroframe's closure, ATS attached as evidence Answers to Interrogatories provided by Aeroframe in the state court case of *Valentine v. Aeroframe Services, LLC, et. al,* 2013 WL 10835400 (La. Dist. Ct. 14th 9/17/2013.  In that case plaintiff and defendants (Aeroframe and Porter) were represented by counsel foreign to this proceeding.  "Please explain in detail why you have not paid Plaintiff his unpaid wages, vacation, and prepaid vacation despite demand" to which Porter replies "Gulf Air, a Baharan owned airline, refused to pay invoices submitted by Aeroframe, LLC thereby defaulting on its agreement with Aeroframe Services, LLC and resulting in Aeroframe Services, LLC not having the funds to make payroll."  Doc. 110, att. 5, p. 29.  Interrogatory Number 13 asks "[p]lease state when you knew that you were going to have to cease business operations, and explain in detail how you knew that the cessation of business operations was going to occur" to which Porter responds "[o]n Friday, August 9, 2013, when Ed Fanning refused to sign the Aeroframe invoice, which was required to borrow payroll, I sent the attached bates stamped Aeroframe 00220."  Interrogatory 14 asks "[p]lease state who made the decision to cease business operations at Aeroframe Services, LLC and how that decision was made" to which Porter responded "Roger Porter decided based on the events described in Response to Interrogatory Numbers 7 and 13."  *Id.,* p. 30.  These responses to discovery were signed March 12, 2014.  Four weeks later Porter files his incidental demand in this matter alleging ATS's nefarious conduct and claiming that conduct was the cause of the closure.

omitted).  "While Aeroframe, Porter, and the plaintiff-employee may not have anticipated the result of the ATS-EADS conversations, their displeasure does not make ATS's actions egregious examples of fraud, deceit, or misrepresentation."  *Id.*  Ashford's "suggestion that ATS bought the note to sabotage the agreement between Aeroframe and AAR has no evidentiary support."  *Id.*

And finally, the court concluded Ashford could not show that any actions by ATS caused his damages.  Ashford produced no evidence that he was to be retained by AAR and paid past or future wages and, for all reasons stated, the LUTPA claim (like the others) was dismissed with prejudice.  *Id.*, p. 25.

### ii.  Aeroframe's Claims

Disposition of Aeroframe's claim was simple and straightforward.  In August of 2013 Aeroframe signed a strict foreclosure agreement where it agreed to "irrevocably and conditionally release[] and forever discharge[] ATS . . . from any and all rights, claims, remedies, and causes of action relating to the Note, Security Agreement, and Note Purchase Agreement, and the transfer of the Transferred Collateral under this Agreement."  Doc. 131, p. 26.  The court found this language to be an unambiguous waiver of all claims of Aeroframe arising out of the purchase of the EADS note.  *Id.*  Aeroframe argued the foreclosure agreement was invalid as having been signed under duress but, since Aeroframe failed to affirmative plead duress as required by federal and state law, that claim was not considered.  The court also noted that, even if duress was to be considered, Aeroframe failed to present any evidence at all to support the claim.  *Id.*, pp. 26-27.  Because Aeroframe had waived all its claims the court awarded summary judgment to ATS against the claims of Aeroframe.

### iii.  Porter's Claims

Porter's claims were likewise dismissed summarily on the merits.

Porter's claims of intentional interference with his business relationship with AAR was rejected because the evidence showed that Porter continued to deal with AAR and AAR offered him employment after the alleged nefarious conduct of ATS.[14]  Doc. 131, p. 38.  The court also found that Porter did not provide any evidence that refuted the evidence put forth by ATS that AAR's decision not to employ Porter was not because of anything ATS did but rather was because Porter failed to pay his Louisiana employees and he blamed his failure on his customers. [15]  *Id.* p. 38.  Porter's claim of intentional interference with contractual relations was dismissed as the court found Louisiana law did not support such a claim against a corporate entity, only against a person.  Doc. 131, pp. 38-39.  Further the court found that Porter failed to produce any evidence of a causal connection between ATS's actions and his damages insofar as he failed to articulate how purchase of the EADS note or foreclosure thereon precluded AAR from hiring him.  AAR did in fact offer Porter an employment contract after ATS's purchase of the note but AAR's refusal to follow through was because he did not pay his employees and blamed his failure on customers rather than taking ownership.  *Id.*, pp. 39-40.

And finally, the LUTPA claim was dismissed for the same reason as the others – a lack of evidence that ATS's actions were unfair or intended to harm him.  In defense of the motion on this claim Porter submitted an affidavit that attested to the allegations of his complaint as well as that of Ashford and Aeroframe, i.e. the nefarious conduct alleged of ATS, but failed to provide evidence to support. "Porter's recounting of the timeline does not create a genuine issue of material

---

[14] Recall that employment contract with AAR was the basis of Porter's suit against AAR in Tennessee.
[15] This conclusion was based on an email chain between AAR employees dated 8/10/13 that stated:
  Two reasons why Roger cannot go into an operating position at our new business in Lake Chares:
  1.  He has committed the most grievous of business leadership/ownership mistakes by missing at least two payrolls.  This will totally diminish employee trust, confidence and therefore his leadership effectiveness.
  2.  He blames his failure on his customers FedEx and ILFC.  We can't afford to have a leader who blames his customers for his failure.  In my brief conversations I did not hear him take ownership for his failure. I only want leaders who take ownership.
Doc. 110, att. 7, p. 24.

fact regarding ATS's conduct.  While Porter has cushioned the timeline with implications that ATS was driven by a desire to harm Aeroframe, these applications are not supported by the evidence." *Id.*, p. 41.  And once again there was no evidence of any causal connection between Porter's damages and ATS's actions and the LUTPA claims were also dismissed with prejudice.

### iv.  Disposition of Motion

That motion was granted.  Doc. 132.  The only claim remaining at that point would be the claim of Ashford against Aeroframe under the Louisiana Last Paycheck Law.

### 3.  Post Judgment Proceedings

#### a.  Appeal to the Fifth Circuit

The non-ATS parties appealed the district court's ruling dismissing all claims as well as its finding that realignment was in order and that we did enjoy subject matter jurisdiction over the claims.  Briefing was lodged in the Fifth Circuit on the appeals of both motions for summary judgment. *See Ashford v. Aeroframe Svcs., LLC*, No. 17-30142, *consolidated with Ashford v. ATS*, No. 17-30482 (5th Cir. Oct. 26, 2018).  In briefing to the Fifth Circuit and at oral argument, counsel for Aeroframe, Porter, and Ashford repeatedly argued that, despite the Brown correspondence, "there is not and never was any settlement between Ashford and Aeroframe." *E.g.*, *Ashford*, No. 17-30142, at doc. 97, p. 10. Once again counsel argued that there was no equivalent of a settlement or compromise.[16]

---

[16] In his appellate brief Ashford, through Brown, stated: "There is **no stipulation** between Mr. Ashford and any other party. The record is (not surprisingly) devoid of any evidence of a stipulation for the simple reason that **one does not exist**." *Ashford*, No. 17-30142, at doc. 27, p. 23 (emphasis in original).  See also:

> **Judge Higginson:** "And there's no case that extends *Caterpillar* to, say, the functional equivalent of [a settlement]? So could parties settle but then just not submit that to get that final dismissal, so as to maintain jurisdiction?"
> **Orlansky:** "Well, had that happened, which there's no record evidence here that that happened, I guess that would be a different inquiry . . . ."

Oral Argument Recording, No. 17-30142, at 3:10.

> **Brown:** "Saying that there was a compromise unfortunately does not make it so, and there has not been a compromise of any of these claims."

The appellate court reversed concluding remand should have been ordered and that we lacked jurisdiction to address the claims on the merits.  Judge Higginson, who authored the opinion, concluded that we committed error when we found jurisdiction because Ashford and Aeroframe were adverse at the time suit was filed.  See *Ashford v Aeroframe Services, LL.C.*, 907 F.3d 385, 387 (5th Cir.2018).  Judge Davis, concurring in the result, concluded that the information presented did not constitute sufficient evidence that the parties had reached an enforceable settlement agreement.  *Id.* at 388-389.  Specifically he stated that the "email was drafted by Ashford's counsel.  ***We have nothing from Aeroframe confirming a promise to pay and/or to stipulate to Ashford's requested relief***."  *Id.* at 389 (emphasis added).

Judge Jones authored a fervent dissent.  She states "[t]he majority today refuse to realign the parties according to their true and ultimate interests in the litigation, leading them to incorrectly conclude that this court lacks diversity jurisdiction."  *Id.* at 389.  She proceeds to detail the factual and procedural background then first addresses whether we were correct in our analysis of subject matter jurisdiction.  For reasons given she concludes "I would hold that the district court did not err when it considered events after this lawsuit was filed in state court to determine whether the parties had realigned their interests and the suit had become removable."  *Id.* at 396.  And she also would have affirmed the lower court's granting ATS's Motion for Summary Judgment.[17]  *Id.* at 398.

---

*Id.* at 13:09.

[17] Ashford argued to the appellate court that the trial court abused its discretion in not allowing him additional discovery before the court ruled on ATS's dispositive motion.  Ashford complained in the court below that he was "at a disadvantage because many of ATS's facts came from a different litigation involving AAR in Tennessee to which Ashford is not a party."  907 F.3d at 398.  Following ATS's point that the Tennessee litigation was brought by Porter and Ashford and Porter were ***represented by the same counsel***, Judge Jones stated "[g]iven Ashford's vexatious behavior, the district court did not abuse its discretion when it found that this motion was 'simply an effort to delay and prolong these proceedings' and denied the motion."  *Id.*

In *Ashford v. ATS*, No. 17-30482, a separate appeal filed by Ashford and Aeroframe but consolidated with *Ashford v. Aeroframe Svcs., LLC*, No. 17-30142, Ashford and Aeroframe sought review of the trial court's mooting their dispositive motions discussed in section B(2)(b) above. They did not make ATS a party to that appeal but ATS intervened.  This was not addressed in the majority opinion given its conclusion as to subject matter jurisdiction, but Judge Jones did address it.  She noted with approval the trial court's determination that these motions were "nothing more than an attempt to relitigate previously decided issues" and said:

> Given that the briefs in this appeal were almost completely dedicated to the jurisdiction issue, it seems clear that these motions were filed merely to re-litigate jurisdiction.  Having concurred with the district court's finding and conclusion of diversity jurisdiction, I would affirm the court's denial of Aeroframe's motion to dismiss and the court's dismissal as moot of Ashford's motion for summary judgment against Aeroframe.

907 F.3d at 397.

Judge Jones then addressed a request made by ATS asking for sanctions under 28 U.S.C. § 1927 and Federal Rule of Appellate Procedure 38.  The bases of ATS's request were the efforts of appellants to "manfacutr[e] 'an elaborate false conflict between Ashford and Aeroframe to defeat removal' and . . . attempting 'to posture these appeals in such a way that ATS did not have the right to participate[18] . . . '"  *Id.*  Ashford replied that ATS had "already moved for sanctions against Porter in district court" and that, by seeking sanctions at the appellate level, ATS was attempting to "avoid the district court's stay order [pertaining to sanctions] and deny due process

---

[18] Here ATS is referring to Ashford's and Aeroframe's filing a separate appeal on their respective motions discussed in section I.B(2)(b) above and not making ATS a party to that appeal and forcing it to intervene.  ATS suggests this action was taken purposefully so that the "Court would not be presented with a clear picture of the facts and circumstances of these appeals."  907 F.3d at 397.

to Ashford by bypassing a discovery hearing on these issues."[19]  *Id.* at 398.  To this point Judge

Jones states:

> These cases have more than a whiff of professional impropriety[20] and
> shenanigans.  From this court's vantage point, it is difficult to separate real
> litigation abuse from "mere" hardball litigation tactics.  Sanctions must also,
> lamentably, take into consideration the majority's insistence on dismissing
> this case.  Because Rule 11 does not seem to preclude the imposition of
> post-dismissal sanctions, I believe the district court should consider this
> possibility, on whom sanctions should be imposed, and what amount is
> appropriate.

*Id.*  As we will soon see, the non-ATS litigants have now received their due process.

### b.  Post-Fifth Circuit Proceedings

Before remand ATS filed the Motion for Sanctions currently under consideration.[21]  Doc.

159.  ATS claims that in December of 2018, while this matter was pending before the Fifth Circuit,

Porter's Tennessee trial against AAR was held.  ATS obtained a transcript of the Tennessee

proceeding and discovered that Porter testified that he had actually compromised the claims of the

Aeroframe employees and ***had a writing to prove it***.

At trial in Tennessee Porter was asked about the fact that Filo represented both him and the

employees in this Louisiana litigation[22].  When asked "[d]o you oppose the employees claims for

unpaid wages?" he responded, "I do not."  Doc. 257, att. 23, p. 3 (pdf. p. 361).  When asked what

arrangements had been made for the employees to recover their wages he responded "I've

---

[19] In yet another example of intellectual dishonesty and despite his suggestion to the Fifth Circuit that ATS was acting improperly for seeking sanctions there while the matter was pending here, Ashford now argues in defense of sanctions that we are precluded from considering the issue because the Fifth Circuit did not rule and therefore tacitly denied. *See* Doc. 217, pp. 8-9.

[20] Reminiscent of the lower court's pondering "[w]hy the Cox Law Firm seems intent on putting itself in an ethical noose by continuing to argue that the parties are adverse while also representing Porter and maintaining that Ashford gave informed consent for that representation is puzzling" in its ruling on the Ashford and Aeroframe motions discussed in Section I.B(2)(b) above.

[21] The previously filed Motion for Attorney Fees and Motion for Bill of Costs [Docs. 135, 149] were mooted upon ATS's acknowledgment that relief sought on those claims is now subsumed in the current Motion for Sanctions.  Doc. 192.

[22] Counsel there apparently also noted the obvious conflict.

subordinated anything that I would get to the employees first, and I've worked with – this past week even signing documents and being involved with the case and working with the firm in Lake Charles . . . ."  *Id.*  When asked whether he put the agreement with the employees into writing he declared that he had.  That writing was Porter's "Contract of Retainer" whereby he engaged "THOMAS A. FILO and SOMER G. BROWN of the firm of COX, COX, FILO, CAMEL & WILSON, and RICHARD T. HAIK, JR., of the law firm of MORROW, MORROW, RYAN & BASSETT" to act as his attorneys to "enforce all claims against AVIATION TECHNICAL SERVICES" for any "injuries or damages arising out of that certain event that occurred on or about the 30th day of July, 2013." [23]  Doc. 257, att. 44.  We refer to this agreement as "the June 4, 2014, Cox-Porter Retention Agreement."[24]

The final paragraphs of June 4, 2014, Cox-Porter Retention Agreement:

> <u>WAIVER OF CONFLICT</u>:  [Porter] understands that [the Cox firm] is currently representing a number of former employees of Aeroframe to collect unpaid wages.  Client expressly waives any conflict regarding the law firm's representation of those former employees and, in addition, agrees that the claims of all former employees of Aeroframe represented by [the Cox firm] shall take priority over the individual claim of . . . Porter and/or Aeroframe against ATS.  . . . Porter expressly agrees to fund those unpaid wage claims from proceeds received by Aeroframe or . . . Porter in the event either Aeroframe or  . . . Porter receives a recovery before such former employees receives recovery.

---

[23] This agreement is the second agreement entered regarding Porter's personal representation.  The first agreement, dated May 5, 2014, involved only Filo, Brown, and Porter.  Doc. 257, att. 43.  On May 9 Filo enrolled in the state court proceeding as his counsel.  Doc. 1, att. 1, p. 182.  This second agreement includes attorney Haik.  Why Filo, an exceeding competent litigator with a patently long-standing relationship with Porter, felt the need to affiliate Haik in this proceeding is somewhat of a mystery.

[24] ATS describes this document as a settlement agreement.  The non-ATS litigants object to that denomination and insist this is a subrogation agreement.  This is not the first linguistic skirmish.  For example, when attempting to persuade the district court that ATS acted improperly in acquiring the EADS note, the non-ATS litigants insisted that ATS was to "settle" the debt but not "purchase" it.  In dismissing this as an issue the district court stated "[t]he court is puzzled by the  plaintiffs' attempt to distinguish between the settlement and purchase of the debt.  The semantic distinction that the plaintiffs highlight is a distinction without a difference."  Doc. 131, pp. 5.  We find these to be prime examples of the non-ATS litigants' engaging in sophistry so we curtailed the battle at inception of the hearing on the Motion for Sanctions (so hopefully on the record all knew exactly to which document any speaker was referring) and instructed all to refer to it as "the June 4, 2014, Cox-Porter Retention Agreement.".

<u>DEFENSE OF CLAIMS</u>:  The law firms of COX, COX, FILO, CAMEL
& WILSON and MORROW, MORROW, RYAN & BASSETT [Haik's
firm] hereby agree to represent . . . Porter in defense of any claims asserted
by ATS for no additional fee.[25]

*Id.*, pp. 3-4.   In the Motion for Sanctions ATS argues, among other things, that the June 4, 2014,

Cox-Porter Retention Agreement "exposes that a fraud was perpetuated on this Court and ATS.

Despite the duty of candor owed to this Court, the [non-ATS parties] throughout the proceedings

in this Court and in the Fifth Circuit steadfastly denied the existence of any stipulation to pay the

Aeroframe employees claim."  *Id.*, att. 1, p. 6.

Before hearing could be had on the request for sanctions, Ashford (represented by Brown)

and Porter (represented by Brown's law partner Filo) filed virtually identical Motions for Entry of

Remand Order. Docs. 213, 214.  In opposing the remand ATS argued that the June 4, 2014, Cox-

Porter Retention Agreement was the agreement that was missing from our original consideration

of the alignment of the parties, that the result at the Fifth Circuit would have been different if it

had been privy to this agreement, and that, "[i]n asking that this Court remand this case back [sic]

to state court, Ashford and Porter seek to take advantage of the fraud they perpetuated on both this

Court and the Fifth Circuit." Doc. 227, p. 6.   The "fraud" allegedly committed by the non-ATS

parties was not just their failure to disclose the existence of the June 4, 2014, Cox-Porter Retention

Agreement but also their steadfast and repeated arguments to this court and the Fifth Circuit that

no such agreement existed.  *Id.*, pp. 4-15.   But-for this "fraud" committed by the non-ATS parties,

according to ATS, the "outcome in the Fifth Circuit would undoubtedly [have] be[en] different."

*Id.*, p. 16.  ATS argues that this new information proved that a valid settlement between the non-

ATS parties did in fact exist.  *Id.*, pp. 17-21.  ATS argued that this new information would allow

---

[25] It is interesting to note, as ATS points out in its Second Notice of Removal, that this retention agreement does not
obligate the Williams firm to defend Aeroframe against the claims of Ashford or any other former employee.

this court to avoid the mandate of the Fifth Circuit to remand to state court, that this situation posed an exception to the mandate rule and would "allow [the] district court to reexamine issues resolved on appeal when there is new evidence or if the decision was clearly erroneous and would work a manifest injustice."  *Id.,* p. 6, citing, *inter alia, Gene & Gene, LLC v. BioPay, LLC*, 624 F.3d 698, 702 (5th Cir. 2010).

In recommending the request for remand be denied pending consideration of the impact of this new information we suggested:

> This court undisputedly retains jurisdiction in order to decide the pending sanctions motion.  Additionally, the alleged concealment from ATS and the court of a settlement that disposed of the nondiverse party's claims would render remand based on an assumption that no such settlement existed clearly erroneous and an instance of manifest injustice.  Evidence of such a settlement as presented through the sanctions proceeding may also constitute new and substantially different evidence.  The court therefore declines to remand any part of the case until it can reach a resolution on the allegations presented through ATS's sanctions motion [which allegations also formed the basis for ATS's objection to remand at that point].

Doc. 231, p. 3.  Ashford and Porter (represented by the same attorneys yet, they clamorously argue, not aligned), but not Aeroframe, objected to the recommendation.  Docs. 234, 237.  The district court declined to adopt the Report and Recommendation and, on April 17, 2019, ordered remand of the claims "except for the pending sanctions issues."  Doc. 247, p. 3.

### 4.  Ashford 2

On May 13, 2019, the day before the hearing on the Motion for Sanctions was to be held, ATS removed again and that proceeding, bearing docket number 19-v-0610, is referred to here as "Ashford 2."  Ashford 2, doc. 1.  ATS again maintains we have diversity jurisdiction over the proceeding.  ATS maintains in its Second Notice of Removal that this court has subject matter jurisdiction under 28 U.S.C. §§ 1441 and 1446.  This second notice begins with a recitation of facts learned after our ruling on jurisdiction in this case as well as the Fifth Circuit's reversal, all

set forth above, and suggests that it has lawfully removed for a second time, that this newly discovered evidence allows us to "re-examine the issue of diversity." *Id.*, p. 18.  It claims that this second removal is not precluded by the earlier proceedings because of the information discovered since the ruling of the Fifth Circuit.

All non-ATS parties have moved to remand, based on the same arguments.[26] *See* Ashford 2, docs 7 (Porter), 8 (Ashford), and 10 (Aeroframe).  Among the arguments, they contend there is no legal basis for removal  and reiterate no settlement exists between these parties [Ashford 2, doc. 8, att. 1, p. 16; (Ashford),; *Id.,* Doc. 10, att. 6, p. 12-14 (Aeroframe),; *Id.*, doc. 7 (Porter), att. 1, p. 13], and that no agreement was concealed from this court. Ashford 2, doc. 8, att. 1, pp. 12-14 (Ashford).  ATS filed a consolidated response to all motions. Ashford 2, doc. 25.  Included in this brief is a request for  sanctions [*Id.*, p. 5] and, as an alternative, it claims that, if we were to conclude that the June 4, 2014, Cox-Porter Retention Agreement was not a settlement between the parties, then "the Cox firm has an ethical conflict of interest in representing Ashford and Porter because Porter is Aeroframe" and "the Cox firm must be disqualified." *Id.*, pp. 5-6.

Through Report and Recommendation issued this same date in Ashford 2 and for reasons stated therein, we recommend to the district court that the Motions to Remand be denied.  More particularly we suggest that our previous conclusion that these parties were not aligned from inception of the litigation was incorrect and we recommend a reversal of that ruling.  Evidence discovered in preparation for the hearing on this Motion to Remand provided more than ample proof that Filo and Porter have worked cooperatively together since before this lawsuit was begun to best position themselves to bring meritless claims against ATS in a forum of their choosing.

---

[26] These arguments are set forth in our Report and Recommendation issued this same day.

Although not necessary given our conclusion on the parties' collusion from inception of the litigation, we did also evaluate the extent to which the June 4, 2014, Cox-Porter Retention Agreement would indeed have had a significant bearing on the Fifth Circuit's conclusion and lament over the time and resources that could have been saved had the non-ATS litigants just been forthcoming about what the arrangement truly was.

## II.
### RULE FOR SANCTIONS AND
### EVIDENCE ADDUCED AT HEARING ON RULE

As noted in the preamble, this Motion for Sanctions was filed against Ashford, Aeroframe, and Porter but it also includes their counsel, Brown, Filo, Haik, and J. and R. Williams.  ATS argues that these individuals and entitles should be sanctioned for (1) fraud on the court, (2) unwarranted and vexatious filings, and (3) continuing to assert claims that had no support in fact or law.  Doc. 159.  ATS suggests that the June 4, 2014, Cox-Porter Retention Agreement belied the "mantra" of the ATS opponents that there existed no agreement "by Porter on behalf of Aeroframe to stipulate to Ashford's claims and pay Aeroframe's employees out of proceeds recovered from ATS.  Those representations were blatantly and now demonstrably false."  Doc. 159, Att. 1, p. 5.  ATS labels this behavior by counsel and the principles as a fraud on the court for which it seeks sanctions.

The respondents opposed the sanctions motion, arguing in relevant part that they had no obligation to turn over the retainer agreement because ATS never requested it and should have assumed its existence, that ATS has violated Rule 11's safe harbor provision, and that their jurisdictional arguments and the Fifth Circuit's remand decision are not compromised by the fact that this agreement was not in evidence. *See generally* docs. 216, 217, 220, 221, 222, 225, 226.[27]

---

[27] At this point we now have counsel enrolled for the counsel and new counsel enrolled for Ashford and Aeroframe. With respect to this motion, we have L. Paul Foreman representing Ashford; Lawrence Billeaud representing

Particularly interesting is the argument of all respondents but Haik that the June 4, 2014, Cox-Porter Retention Agreement was no surprise at all – EVERYONE knew of it. *See* Doc. 217 (Ashford), p. 4; doc. 216 (Aeroframe), p. 7; doc. 220 (Porter), p. 5; doc. 221 (Brown), pp. 12-13; doc. 225 (Williams), pp. 9-12; doc. 226 (Filo), p.3-4. This is in line with Brown's response to discovery propounded for this motion. When asked who knew of the agreement on September 24, 2014, (the date of the initial hearing on the Motion to Remand) she included in her response "Magistrate Judge Kathleen Kay." Doc. 257, att. 8, p. 6. When asked who knew of the agreement on March 5, 2018, (the date of oral argument before the Fifth Circuit) she answered "Judge Stephen Higginson, Judge Edith Jones, Judge Eugene Davis." *Id.*, p. 7. This argument itself is vexatious and we reject it outright. It will be given no further consideration.

This court held hearing on the motion for sanctions. We learned at the hearing that the non-ATS parties incessant arguments (discussed above) in this court and the Fifth Circuit that there was no writing, no written agreement of any kind, were always simply untrue – there existed the June 4, 2014, Cox-Porter Retention Agreement. Regardless of whether that agreement constitutes a settlement of the claims of the non-ATS litigants, it is nevertheless an agreement and it is in writing rendering those arguments patently false.[28] We also learned that the Williams firm had a

---

Aeroframe; Terry Thibodeaux representing David Frohn representing Somer Brown, Thomas A. Filo, and Cox, Cox, Filo, Camel & Wilson; Charles Kreamer representing Richard T. Haik, Jr., and Morrow, Morrow, Ryan, Basset & Haik; and Emmett Sole representing Joseph Payne Williams, Sr., Richard Bray Williams, and Williams Family Law Firm, LLC.

[28] ATS provides several examples of belittling characterizations made by all three of its opponents in various pleadings to date many of which are incorporated into the background portion of this opinion. For example, it notes that Brown wrote "ATS has offered no evidence of any settlement (which is understandable since no settlement exists). "See Doc. 244, refencing to Doc. 55, p. 2. She also argued "[t]here is not so much as a statement on behalf of Aeroframe regarding any stipulation, settlement, or understanding . . . ." *Id.*, referencing Doc. 63, p. 7. Aeroframe argued "[h]ad ATS bothered to read Aeroframe's April 8, 2014, Answer [filed in this proceeding] it would clearly know the email [of Brown to clients seeking waiver of conflict and quoted above] was incorrect and Aeroframe obviously intended to defend itself against Plaintiff Michael Ashford's claim." *Id.*, referencing Doc. 22, p. 14. Elsewhere Aeroframe argued it had "never entered into a stipulation that Aeroframe would subordinate its claims against ATS to those of Mr. Ashford against ATS." *Id.*, referencing Doc. 56, p. 4. Porter likewise argued he had entered into no settlement agreement or compromise with any former employees and that "ATS has failed to present any evidence of a settlement, because no such settlement" existed. *Id.*, referencing Doc. 57, p. 6.

long standing relationship with the Cox firm, one that was so intricate it mandated the firm's

obtaining a waiver of conflict from Porter before it would enroll for Aeroframe.[29]

Other evidence showed that Porter had been colluding with members of the Cox Firm since

before this litigation started.  We learned that the Cox Firm had previously represented Porter

either individually or on behalf of Aeroframe or both.  Doc. 260, pp. 7-10.  We learned that Porter

gave permission directly to Filo for his firm to represent the employees against his company (but

not him).  *Id.*, p. 11.  We learned that Brown initially refused to represent any of the former

employees because she knew Aeroframe had no money.  Doc. 259, p. 92. Her attitude changed,

however, when she discovered Filo had conferred with Porter.  *Id.* at pp. 94.  We learned that all

the information that was contained in Ashford's complaint about the relationship between

Aeroframe/Porter and ATS was information that Porter had given Filo before suit was filed.  *Id.* at

p. 11.  We also learned that Porter was sending employees to the Cox firm to sue Aeroframe and

ATS (but not him).[30]   Doc. 257, att. 28.  We verified that Porter is the sole member, manager, or

---

[29]In January of 2014, Porter met J. Williams and R. Williams at the Cox Firm regarding Aeroframe's representation. Doc. 257, att. 7, p. 6. After this meeting, Bray Williams cautioned Porter that, because his firm "has an extensive history with The Cox Firm," a potential conflict of interest" as the two firms had "vested mutual financial interest in numerous cases together." Doc. 257, att. 18.  Still, Porter waived the conflict and hired the Williams Firm to represent Aeroframe for all of the cases initiated by the Cox Firm. *Id.* at att. 19.

[30] Ashford's suit was one of ten filed by Brown on behalf of multiple employees, all of which were removed by ATS. *Gallow et al. v. Aeroframe Services LLC, et al.*, 2:14-cv-00988, Doc. 1 (W.D. La. May 14, 2014) (Notice of Removal) (originally filed in Calcasieu Parish September 16, 2013); *Warner v. Aeroframe Services LLC, et al.*, 2:14-cv-00983, Doc. 1 (W.D. La. May 14, 2014) (Notice of Removal) (originally filed in Cameron Parish September 19, 2013); *Cooley, et al. v. Aeroframe Services LLC*, et al., 2:14-cv-00987, Doc. 1. (W.D. La. May 14, 2014) (Notice of Removal) (originally filed in Calcasieu Parish September 24, 2013); *Rackard v. Aeroframe Services LLC, et al.*, 2:14-cv-00991, Doc. 1 (W.D. La. May 14, 2014) (Notice of Removal) (originally filed in Beauregard Parish September 25, 2013); *Adams, et al. v. Aeroframe Services LLC, et al.*, 2:14-cv-00984, Doc. 1 (W.D. La. May 14, 2014) (Notice of Removal) (originally filed in Calcasieu Parish October 7, 2013); *Ashford v. Aeroframe Services LLC, et al.*, 2:14-cv-00992, Doc. 1 (W.D. La. May 14, 2014) (Notice of Removal) (originally filed in Evangeline Parish October 8, 2013); *Boring, et al. v. Aeroframe Services L L C et al.*, 2:14-cv-00985, Doc. 1 (W.D. La. May 14, 2014) (Notice of Removal) (originally filed in Calcasieu Parish October 18, 2013); *Cleaves, et al. v. Aeroframe Services LLC, et al.*, 2:14-cv-00986, Doc. 1. (W.D. La. May 14, 2014) (Notice of Removal) (originally filed in Calcasieu Parish November 5, 2013); *Decolongon, et al. v. Aeroframe Services LLC, et al.*, 2:14-cv-00989, Doc. 1 (W.D. La. May 14, 2014) (Notice of Removal) (originally filed in Calcasieu Parish February 21, 2014); *Blanton, et al. v. Aeroframe Services LLC, et al.*, 2:14-cv-00990, Doc. 1 (W.D. La. May 14, 2014) (Notice of Removal) (originally filed in Calcasieu Parish April 22, 2014). Four additional proceedings were filed by Brown after the initial removal of Ashford I. *Morvant, et al. v. Aeroframe Services LLC, et al.*, 2:14-cv-02323, Doc. 1. (W.D. La. July 16, 2014) (Notice of Removal) (originally filed in

representative of Aeroframe.  Doc. 257, att. 11, p. 1. We learned that the Cox Firm had previously represented either Aeroframe or Porter, or both.  Doc. 260, pp. 7-10. We learned that Porter communicated with Brown directly before this suit was filed when, on September 26, 2013, he emailed her to obtain an extension to answer for Aeroframe in suits already filed to which Brown replied "[w]e will take no adverse action against Aeroframe and will contact you before any matters proceed." Doc. 257, att. 8, p. 26.  And we confirmed that which we previously suspected, that Porter's exceedingly sophisticated pleading that he filed in state court was prepared for him by Filo.[31] Doc. 260, p. 30.[32]

## III.
### LAW & APPLICATION

ATS seeks sanctions against Ashford, Aeroframe, Porter, Filo, Brown, Richard T. Haik, Jr., Joseph P. Williams, Sr., and Richard B. Williams citing to the court's inherent powers, Rule 11, and 28 U.S.C. § 1927.  Doc. 159, att. 1, p. 20.

### A.  Authority to Sanction

Rule 11 "impose[s] three affirmative duties with which an attorney or litigant certifies he has complied by signing a pleading, motion, or other document." *Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1023-24 (5th Cir. 1994) As set forth by the Fifth Circuit these duties are to ensure

---

Jefferson Davis Parish June 3, 2014); *Coley, et al. v. Aeroframe Services LLC, et al.*, 2:14-cv-02324, Doc. 1 (W.D. La. July 16, 2014) (Notice of Removal) (originally filed in Calcasieu Parish April 3, 2014); *Barreda, et al. v. Aeroframe Services LLC, et al.*, 2:14-cv-02538, Doc. 1, (W.D. La. Aug. 20, 2014) (Notice of Removal) (originally filed by Brown's partner, Tina Wilson, in Calcasieu Parish August 1, 2014); *Day v. Aeroframe Services LLC, et al.*, 2:16-cv-01512, Doc. 1 (W.D. La. Oct. 26, 2016) (Notice of Removal) (originally filed in Calcasieu Parish August 5, 2016.

[31] Porter's Answer and Incidental Demand was filed April 7, 2014. Doc. 1, att. 1, p. 101. Filo enrolled May 8, 2014. Doc. 1, att. 1, p. 182.
[32] We have relied on this information to conclude in Ashford 2 that these parties have indeed been aligned since inception of the litigation and therefore recommend that the Motions to Remand in Ashford 2 be denied.

(1)     that the attorney has conducted a reasonable inquiry into the facts which support the document;

(2)     that the attorney has conducted a reasonable inquiry into the law such that the document embodies existing legal principles or a good faith argument "for the extension, modification, or reversal of existing law;" and

(3)     that the modification is not interposed for purposes of delay, harassment, or increasing the costs of litigation.

*Thomas v. Capital Sec. Services, Inc.*, 836 F.2d 866, 874 (5th Cir. 1988). "Compliance with these affirmative duties is measured as of the time that the document is signed." *Childs*, 29 F.3d at 1024 (citations omitted). As otherwise stated, the rule governs only papers filed with a court [*Chambers v. NASCO, Inc.,* 111 S.Ct. 2123, 2131 (1991)] "isolated to the moment the paper is signed." *Thomas*, 836 F.2d at 875.

Section 1927 of 28 U.S.C. permits sanctions for the excess costs, expenses and attorney's fees reasonably incurred because of an attorney's unreasonable and vexatious multiplication of the proceedings. These sanctions may only be imposed upon attorneys [*Browning v. Kramer*, 931 F.2d 340, 344 (5th Cir. 1991)] and imposition requires "a showing of improper purpose." *F.D.I.C. v. Calhoun*, 34 F.3d 1291, 1300 (5th Cir. 1994). As articulated by one court,

Sanctions under § 1927 are warranted when an attorney has engaged in some sort of conduct that, from an objective standpoint, falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.

*Wilson-Simmons v. Lake County Sheriff's Dept.*, 207 F.3d 818, 824 (6th Cir. 2000) (internal quotations and citations omitted).

Outside of Rule 11 and § 1927, Federal courts enjoy the inherent power to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases" giving them the authority to "fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers*, 111 S.Ct. at 2132-33. Although such sanctions should be specifically tailored to redress

the harm suffered by the aggrieved party [*see Goodyear Tire & Rubber Co. v. Haeger*, 137 S.Ct. 1178, 1186 (2017) noting that under inherent power, "the court can shift only those attorney's fees incurred because of the misconduct at issue"], sanctions can be levied against any actor responsible for the misconduct. *See Clark v. Mortenson*, 93 Fed.Appx. 643, 652 (5th Cir. 2004) (citing *Chambers v. NASCO, Inc.*, 111 S.Ct. 2123 (1991). "A decision to invoke the inherent power to sanction requires a finding of 'bad faith or willful abuse of the judicial process.'" *In re Moore*, 739 F.3d 724, 729 (5th Cir. 2014) (quoting *Gonzalez v. Trinity Marine Grp., Inc.*, 117 F.3d 894, 898 (5th Cir. 1997)) *But See Blanco River, LLC v. Green*, 457 Fed.Appx. 431, 438 (5th Cir. 2012) (quoting *In re Sealed Appellant*, 194 F.3d 666, 671 (5th Cir. 1999)) ("[w]hen bad faith is patent from the record and specific findings are unnecessary to understand the misconduct giving rise to the sanction, the necessary finding of 'bad faith' may be inferred.")

The bad faith standard is met when another "party has been the victim of unwarranted, oppressive, or vexatious conduct on the part of his opponent and has been forced to sue to enforce a plain legal right." *American Employers Ins. Co. v. American Sec. Bank, N.A.*, 747 F.2d 1493, 1502 (D.C. Cir. 1984) (citing *Alyeska Pipeline Service Co. v. Wilderness Society*, 95 S.Ct. 1612, 1622 (1975)). "Bad faith 'is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity ... it contemplates a state of mind affirmatively operating with furtive design or ill will.'" *Turfgrass Group, Inc. v. Northeast Louisiana Tufts Farm, LLC*, 2013 WL 6145294, at *3 (W.D. La. Nov. 20, 2013) (quoting *United States v. Gilbert*, 198 F.3d 1293, 1299 (11th Cir. 1999). "Courts have the authority to make credibility determinations to resolve whether such misconduct has occurred." *United States v. Fisch*, 2018 WL 2335743, at *5 (S.D. Tex. May 23, 2018) (citations omitted). Even in the absence of direct evidence, the standard can be met if a party's conduct is so egregious that it

could only be committed in bad faith. *See Roadway Exp., Inc. v. Piper*, 100 S.Ct. 2455, 2465 (1980) (stating that inherent powers requires a finding that "counsel's conduct … constituted or was *tantamount to bad faith*" (emphasis added)); *See also Sheshtawy v. Gray*, 697 Fed.Appx. 380, 393 (5th Cir. 2017) ("the district court determined that *the facts and circumstances supported an inference* that Plaintiffs were acting in bad faith so that sanctions were justified under the court's inherent powers" (emphasis added)). Such a determination should be made with regard to "the circumstances of the case," [*Chambers*, 111 S.Ct. at 2138] which may include "not only in the actions that led to the lawsuit, but also in the conduct of the litigation." *Hall v. Cole*, 93 S.Ct. 1943, 1951 (1973).

Without a finding of bad faith, a court may also impose sanctions for conduct that violates its local rules. *In re Luttrell*, 749 Fed.Appx. 281, 286 (5th Cir. 2018) (citing *In re Goode*, 821 F.3d 553, 559 (5th Cir. 2016)). The district court's authority to promulgate local rules is derived from 28 U.S.C. § 2071, which allows the courts only to adopt "rules for the conduct of their business." Two rules identified to be of pertinence today are Rule 3.3 and Rule 1.7.

Rule 3.3 of the Rules of Professional Conduct of the Louisiana State Bar Association as adopted by the United States District Court for the Western District of Louisiana imposes a duty of candor on attorneys. *See* LR83.2.4.  Under this Rule, a lawyer shall not knowingly "make a false statement of fact . . ." Moreover, several courts have found that the duty of candor can be violated by an attorney who misleads the court through omission. *See, e.g., In re River Street Ventures, LLC*, 265 So.3d 940, 944 (La.App. 5 Cir. 2019); *Willis v. EAN Holdings*, 226 So.3d 438 (La. 2017). As noted by one court, "[m]ost authors would also include that it is a lawyer's duty not only to be honest but also not to mislead or allow a court to be misled by half-truths or statements which, while technically honest, are calculated to mislead." *Texas v. United States*, 2016 WL

3211803, at *9 (S.D. Tex. May 19, 2016) (citing Model Rules of Prof'l Conduct r. 3.3 cmts. 2 & 3 (Am. Bar Ass'n 2013)).[33]

Rule 1.7 of Louisiana's Rules of Professional Conduct prevents a lawyer from representing a client if the representation involves a concurrent conflict of interest. The rule further explains that for a law firm to represent two clients with a current conflict of interest, it must meet four criteria:

(1)     the [law firm must] reasonably believe that [it] will be able to provide competent and diligent representation to each affected client;

(2)     the representation [must] not [be] prohibited by law;

(3)     the representation [must] not involve the assertion of a claim by one client against another client represented by the [law firm] in the same litigation or other proceeding before a tribunal; and

(4)     each effected client [must] give[ ] informed consent, confirmed in writing.

Rule 1.7 (b); *See also* Rule 1.10 (imputing conflicts of interest to lawyers associated in a firm). As set forth under the first criteria, if a law firm does not reasonably believe it can competently and diligently represent both clients, a conflict cannot be waived. *Johnson v. Clark Gin Service, Inc.*, 2016 WL 7017267, at *13 (E.D. La. Dec. 1, 2016) (finding a conflict of interest non-consentable under Rule 1.7(b)(1) when a law firm attempted to represent both plaintiff-passengers and plaintiff-employees in an action stemming from a train collision).

---

[33] Although not specifically incorporated into Rule 3.3, several courts have suggested that attorneys have a "continuing duty to inform the Court of any development which may conceivably affect the outcome of the litigation." *Bd. of License Comm'rs. v. Pastore*, 105 S.Ct. 685, 686 (1985) (quoting *Fusari v. Steinberg*, 95 S.Ct. 553, 530 (1975) (Burger, C.J, concurring)); *U.S. v. Shaffer Equipment Co.*, 11 F.3d 450, 458 (4th Cir. 1993); *Cf. Virzi v. Grand Trunk Warehouse and Cold Storage Co.*, 571 F.Supp. 507, 512 (E.D. Mich. 1983) ("There is an absolute duty of candor and fairness on the part of counsel . . . [and] zealous representation of an interests [ ] does not justify withhold of essential information).

**B. Application of these Principles to Respondents:**

**1. Michael Ashford**

On more than one occasion in open court we have asked, somewhat rhetorically, "who is representing Mr. Ashford?"  It appears very clear that the answer is "no one."  It is apparent that the only client about whom the Cox firm was concerned was Porter.

Aeroframe and Porter extracted two weeks of labor from this gentleman for which he has yet to be paid.  Brown was uninterested in representing him initially because Aeroframe was insolvent.  Her interest was piqued only after her partner Filo spoke with Porter and the two developed a plan whereby they could use these employees like pawns in an effort to reach the true target, the deep pockets of ATS.

Brown did file a Motion for Summary Judgment to fix Ashford's claim but, as we note previously, the purpose was not to get his claim fixed but rather was an attempt to get around our ruling on jurisdiction.  See discussion at Section I.B(2)(b).  As we note previously, Aeroframe (Porter) "fought" this motion by arguing it should not be held liable for exemplary damages and submitted an affidavit from Porter restating the allegations of his complaint against ATS.  If Brown were truly representing Ashford, why would she not have had her client Porter include in that declaration that the figures given by Ashford were correct?  The answer is because she did not care about Ashford's claim; she only cared about Porter's bigger claim against ATS which he wanted handled in state court.

Brown also never investigated the extent to which Porter may have some culpability in Ashford's damages by either considering whether he improperly removed funds from the business (as was alleged in every other case for wages brought by former employees who were represented by attorneys other than the Cox firm) or his failure to pursue receivables allegedly owed to

Aeroframe that were the cause of its closure (his stated reason for not wanting to pursue was because of the close relationship between those creditors and the company Porter was hoping to go with, AAR). Doc. 257, att. 24, pp. 8-9 (pdf. pp. 267-268).

Michael Ashford has suffered enough and does not deserve to be sanctioned.

### 2.   Joseph P. Williams, Sr., and Richard B. Williams

It appears clear these attorneys had worked successfully with the Cox firm in the past and agreed to take on this representation at the request of Filo.  Doc. 257, att. 18, 19.   We find they must have been somewhat culpable in the ruse that was perpetuated but their involvement was minimal and they did move to withdraw from this litigation once the letter was sent from ATS counsel regarding sanctions.  Additionally they were unaware that Porter had obligated their client regarding the employee claims in the June 4, 2014, Cox-Porter Retention Agreement.  Doc. 127 (Motion to Withdraw) and Doc. 260, p. 86 (testimony of R. Bray).  While their involvement is regrettable, we do not find their actions rise to the level of bad faith that would call us to invoke our inherent authority and recommend sanctions.

### 3.   Richard T. Haik, Jr

We queried earlier about why Filo found it necessary to involve Mr. Haik as counsel for Porter but his involvement was also minimal.  In fact, he never met or spoken personally to Porter. Doc. 257, att. 14, p. 8.

Whatever was the purpose of his involvement it does not appear that he participated in the over-arching scheme perpetuated by Brown, Aeroframe, Porter, and Filo.  Accordingly we do not find his actions rise to the level of bad faith that would call us to invoke our inherent authority and recommend sanctions.

### 4.   Somer Brown, Aeroframe Services, LLC, Roger Porter, and Thomas A. Filo

There is zero merit to the claims of any of these litigants against ATS.  This was the finding of the district court when it granted summary judgment dismissing those claims.  Doc. 131.  While that ruling may have been vacated because of the appellate court's conclusion we lacked jurisdiction to dismiss the claim, that does not mean that the district court's evaluation was improper or its conclusions erroneous.  Judge Jones in her dissent concurred with those findings. *Ashford*, supra, 907 F.3d at 398.  Nothing has been presented here or elsewhere that somehow breathes validity into the claims made against ATS, claims based upon facts that sprang from the imagination of Roger Porter.  ATS prevailed against Porter and Aeroframe with Porter's own words and actions in this suit as well as his suit against AAR.  Comparison of the rulings in each case show clearly that Porter played ATS against AAR engaging in duplicitous behavior for the benefit only of himself to find who could give him the best deal.

The collusion of these parties as set forth *supra* is clear evidence of their bad faith throughout the course of this litigation. Moreover, the record supports the inference that, although this suit was technically brought by Ashford, this entire litigation was pursued for Porter's (and Aeroframe's) benefit in coordination with Brown and Filo, a willful abuse of the judicial process. Ashford has been simply the vehicle, driven by Porter with the assistance of Brown and Filo, to keep his conflict with ATS in the forum for which Porter shopped.  Their each filing separate motions and memoranda throughout this proceeding that all made the same arguments as well as their decision to file multiple law suits against the same defendants alleging identical causes of action in furtherance of their forum shopping does indeed constitute unreasonable and vexatious multiplication of the proceedings as contemplated by 28 U.S.C. § 1927 entitling ATS to costs, expenses and attorney fees incurred as a result.

-35-

Both Brown and Filo have suggested that somehow their behavior relative to the conflicts with their clients should be excused as they preemptively sought and obtained ethical clarification on this presumptively inappropriate dual representation from Leslie Schiff, a very well respected member of the Louisiana Bar who was accepted by the court as an expert in the field of lawyer ethics at the hearing on the Motion for Sanctions held May 14, 2019.  Doc. 259 pp. 135-159.  It was clear from the testimony of Mr. Schiff that he was operating on a "need to know" basis, that "need" being defined by Brown and Filo.  For example, he was never shown the Brown e-mail. *Id.* at p. 151.  He also did not consider Aeroframe in the mix at all and did not deal with the issue of whether Aeroframe was a competitor for the funds supposedly payable from ATS.  *Id.* at pp. 154-155.   Accordingly he was unaware that Porter's engagement in conflict with Ashford over how much is owed to the latter clearly puts Ashford and Aeroframe and Porter in the same mix for funds – if Ashford doesn't collect part of what is owed to him as per his affidavit, then Porter, either in his own right or as sole owner of Aeroframe, gets to keep the money.  Mr. Schiff was not given the benefit of the totality of the dealings among these players and therefore his opinion as to their appropriateness vis-à-vis the Code of Professional Responsibility is not helpful.

We suggest and recommend the district court conclude that our inherent authority and the local rules mandate imposition of sanctions against these parties.[34] All have engaged in the willful abuse of the judicial process. As attorneys, the Cox Firm's concurrent representation of Porter and Ashford left Ashford without an attorney to adequately represent his interests,[35] warranting

---

[34] As our finding of bad faith is based on conduct that occurred throughout the course of this litigation, we do not find Rule 11 Sanction to be appropriate. *See Childs*, 29 F.3d at 1024 (citations omitted).

[35] Recalling that Brown secured Ashford's waiver of conflict by promising a stipulation from Aeroframe and Porter, she now, stunningly, argues in opposition to imposition of sanctions that if Porter or Aeroframe were to refuse to pay in accordance with the June 4, 2014, Cox-Porter Retention Agreement, then Ashford – her supposed client – would have no recourse against Porter – also her client.  Any action for breach of contract would be between Filo – her partner – and Porter – her OTHER client. See Doc. 221, p. 19.  Ashford would just be out of luck!  Also noteworthy is Brown's testimony at the hearing on the Motion for Sanctions.  There she testified that the language in her email that that "your entitlement to wages, penalties, and attorney's fees will be stipulated to by Aeroframe" was not a

sanctions under Rule 1.7.  The repeated denials of the existence of any type of a writing or agreement despite the existence of the June 4, 2014, Cox-Porter Retention Agreement is sanctionable under Rule 3.3.

### C.  Appropriate Sanctions

Sanctions imposed by this court "must be compensatory, rather than punitive, when imposed pursuant to civil procedures." *Goodyear Tire*, 137 S.Ct. at 1182 (citations omitted). "A sanction counts as compensatory only if it is 'calibrate[d] to [the] damages caused by' the bad-faith acts on which it is based." *Id.* (quoting *International Union, United Mine Workers v. Bagwell*, 114 S.Ct. 2552, 2561 (1994)). What would be appropriate under these circumstances will be determined through a separate evidentiary hearing to be held once the district court has reviewed this recommendation, assuming of course that the court agrees.

. **IV.**
**CONCLUSION**

For the reasons provided above, we recommend that the Motion for Sanctions [doc. 159] filed by Aviation Technical Services, Inc., be **DENIED** as to Michael Ashford, Joseph P. Williams, Sr., Richard B. Williams, and Richard T. Haik, Jr.  We also recommend that the motion be **GRANTED** as to Somer Brown, Aeroframe Services, LLC, Roger Porter, and Thomas A. Filo. What amount of sanctions would be appropriate should be determined through a separate evidentiary hearing to be held once the district court has reviewed this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to

---

promise to obtain a stipulation to Ashford's wages, penalties, and attorney fees.  And in yet another stroke of bravado she testified that her clients received what she promised!  Doc. 259, pp. 123-125

file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

   THUS DONE this 29th day of May, 2020.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE