UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MICHAEL ASHFORD<br><br>versus<br><br>AEROFRAME SERVICES, LLC AND AVIATION TECHNICAL SERVICES, INC. | CIVIL ACTION NO. 2:14-cv-992<br><br>JUDGE WALTER<br><br>MAGISTRATE JUDGE KAY |

### ATS'S REPLY TO THE SANCTIONED PARTIES' OPPOSITIONS TO ATS'S ORIGINAL AND SUPPLEMENTAL MEMORANDUM SUGGESTING APPROPRIATE SANCTIONS

Aviation Technical Services, Inc. ("ATS"), respectfully submits this Reply to the Oppositions to ATS's Original and Supplemental Memorandum Suggesting Appropriate Sanctions filed by Aeroframe Services, LLC ("Aeroframe") (Rec. Doc. 315), Roger A. Porter ("Porter") (Rec. Doc. 316) and Somer Brown ("Brown") and Thomas A. Filo ("Filo") (Rec. Doc. 317) (collectively, the "Sanctioned Parties").

**I. INTRODUCTION**

Before filing the first of multiple suits, the Sanctioned Parties—Aeroframe and Porter, who are one in the same,[1] and attorneys Filo and Brown—contrived a scheme to try groundless claims against ATS before a friendly state court judge, using the Aeroframe employees as their "pawns"[2] and naming defunct Aeroframe, but not Porter, a defendant to deny ATS its right to a federal forum.

---

[1] "With all that has been uncovered over the five years since that ruling was issued we have no difficulty now concluding that is indeed the case [Porter and Aeroframe were one and the same] and state this as fact throughout this document before and after this point in our ruling." Rec. Doc. 283, p. 8 n.5.

[2] Rec. Doc. 309, p. 38 (originally filed in Case No. 19-cv-610, Rec. Doc. 111).

In naming Aeroframe as a defendant, there was never a genuine desire by the Sanctioned Parties for judicial relief against defunct Aeroframe. Indeed, as this Court has recognized, in many cases Aeroframe was not served with the Petitions and, in cases where Aeroframe was served but had not answered, no effort to obtain a default was taken. In response to the Court's suggestion that the Plaintiffs' claims against Aeroframe may be dismissed for lack of service or lack of prosecution, Aeroframe, unlike any other Defendant, jumped in to save the Plaintiffs' claims.[3] As this Court recognized, "[r]emarkably (or not), the plaintiff-employees needed lift no finger to remedy their lapses in prosecution—Aeroframe just voluntarily answered each of the claims to keep them alive. [Case No. 19-cv-610], Rec. Doc. 105. This is what litigants do when they are the same team!" Rec. Doc. 309, p. 36-37 n. 51. The collusion of the Sanctioned Parties is "clear evidence of their bad faith throughout the course of this litigation." Rec. Doc. 283. at p. 36.

For seven years, the Sanctioned Parties have done everything in their power to deny ATS its right to a federal forum and vacate on jurisdictional grounds valid judgments dismissing all claims against ATS with prejudice. As a result, this Court has determined that they should be sanctioned for their bad faith "willful abuse of the judicial process" and "unreasonable and vexatious multiplication of the proceedings."[4] Rec. Doc. 283. The only issue presently before the

---

[3] Rec. Doc. 314, p. 5 ("Aeroframe saved the plaintiff-employees the effort of either effecting service or taking a default by voluntarily answering the complaints of all remaining plaintiff-employees in all consolidated cases.") (citing Case No. 19-cv-610, Rec. Doc. 105 and atts. 1-11).

[4] Although the Sanctioned Parties devote a great number of pages discussing Fed. R. Civ. Proc. 11, this Court did not sanction the Sanctioned Parties pursuant to Rule 11, concluding: "As our finding of bad faith is based on conduct that occurred throughout the course of this litigation, we do not find Rule 11 Sanction to be appropriate." Rec. Doc. 283 at 36 n. 34 (emphasis added). Rather, the Court concluded "that our inherent authority and the local rules mandate imposition of sanctions against these parties." *Id.* at p. 36. The Court further concluded as to Brown and

Court is the appropriate sanction.

## II. RESPONSE TO SANCTIONED PARTIES' GENERAL OBJECTIONS

This Court concluded, and the District Court agreed, that the Sanctioned Parties "[a]ll have engaged in the willful abuse of the judicial process," Rec. Doc. 283 at p. 36, adopted by Rec. Doc. 294, and that Sanctioned Parties' collusion "from inception of the litigation" is "clear evidence of their bad faith throughout the course of this litigation." *Id*. at pp. 25, 35 (emphasis added).

Contrary to the assertions of the Sanctioned Parties that ATS's suggested sanctions are not specific to the misconduct at issue, the Sanctioned Parties' conduct being sanctioned is the willful abuse of judicial process "from inception of the litigation" and collusion "since before this lawsuit was begun" (Rec. Doc. 283, p. 25); that is, the scheming to deny ATS is right to a federal forum, the misrepresentations to the Court regarding the non-existence of an agreement that in fact existed, the willful multiplication of proceedings and the assertion of groundless claims against ATS from the inception. Simply, ATS should have never been named in this contrived suit.

As this Court found, "[t]heir each filing separate motions and memoranda throughout this proceeding that all made the same arguments as well as their decision to file multiple law suits against the same defendants alleging identical causes of action in furtherance of their forum shopping does indeed constitute unreasonable and vexatious multiplication of the proceedings as contemplated by 28 U.S.C. § 1927 entitling ATS to costs, expenses and attorney fees incurred as a result." *Id.* at 35 (emphasis added). "Though § 1927 speaks of vexatious multiplication of

---

Filo that their conduct "does indeed constitute unreasonable and vexatious multiplication of the proceedings as contemplated by 28 U.S.C. § 1927." *Id.*

litigation, the section can support an award of attorney's fees for an entire course of proceeding if the case never should have been brought in the first place. *McCully v.. Stephenville Indep. Sch. Dist.,* 2013 U.S. Dist. LEXIS 179989, *7 (E. D. Tex. Dec. 23. 2013) (citing *Lewis v. Brown & Root, Inc.,* 711 F.2d 1287, 1292 (5th Cir. 1983), see also *Browning v. Kramer*, 931 F.2d 340, 345 (5th Cir. 1991) (indicating that "when the entire course of proceedings were unwarranted and should never have been commenced nor persisted in" the entire financial burden of an action's defense can be shifted to the plaintiff under § 1927).

Accordingly, without question, this Court has the inherent authority to award the legal fees and costs suggested by ATS as a sanction for the Sanctioned Parties' "willful abuse of the judicial process" and "unreasonable and vexatious multiplication of the proceedings." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1183-84 (2017) (citing *Link v. Wabash R. Co.*, 370 U.S. 626, 630-631 (1962)). Indeed, the Supreme Court has stated that one permissible sanction is an order "instructing a party that has acted in bad faith to reimburse legal fees and costs incurred by the other side." *Id*. at 1186 (citing *Chambers v. NASCO, Inc*., 501 U.S. 32, 45 (1991)). The court should apply a "but for" causation standard when exercising its inherent authority, while being mindful of the context of the abuse.

> "The essential goal" in shifting fees is "to do rough justice, not to achieve auditing perfection." Accordingly, a district court "may take into account [its] overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." The court may decide, for example, that all (or a set percentage) of a particular category of expenses—say, for expert discovery—were incurred solely because of a litigant's bad-faith conduct. And such judgments, in light of the trial court's "superior understanding of the litigation," are entitled to substantial deference on appeal.

*Goodyear Tire & Rubber Co*., 137 S. Ct. at 1187 (citations omitted). Acknowledging its previous decision in *Chambers*, the Supreme Court again held that, if the sanctionable conduct implicates

the filing of the case from its inception, then the entire expense incurred in defending may be awarded as a sanction. *Goodyear Tire & Rubber Co.*, 137 S.Ct. at 1187-88.

As of May, 31, 2021, ATS has incurred $1,588,330.20 in attorney's fees—an average of $328.00/hour for 4,828.05 hours—and $52,136.00 in costs, for a total of $1,640,466.20, as a result of the Sanctioned Parties' misconduct. Rec. Doc. 311, p. 2. In their Oppositions, the Sanctioned Parties cannot and do not argue that an average hourly rate of $328.00/hour is unreasonable or that the 4,828.05 hours expended over almost seven years on 15 suits is illegitimate—that averages to 804 hours/year among multiple attorneys.

Contrary to the Sanctioned Parties' repeated arguments otherwise, ATS is not seeking fees and costs for actions taken by ATS in state court. Rather, as the invoices show and as Mr. Vance states in his Original Declaration (Rec. Doc. 299-1) and testified in his deposition (Rec. Doc. 317-1), ATS is requesting costs and fees starting with its proper removal of cases to federal court in May of 2014. The fees and cost identified do not include those incurred by ATS to file exceptions, answers, cross-claims, and third-party demands in the multiple suits then-pending in state court, nor do the fees and costs reflect time and expenses incurred for ATS's counsel to travel to Seattle, Washington for the deposition of ATS's corporate representatives in March of 2014. Rec. Doc. 299-1, ¶ 20.

As detailed in Mr. Vance's Original Declaration, as of August 5, 2020, the Sanctioned Parties caused 135 pleadings to be filed objecting to jurisdiction and since then many more. Further, as Mr. Vance shows, a review of the docket sheet in each of the 16 removed Cox Firm cases (as of August 5, 2020) reveals in excess of 1200 docket entries in the related cases and again many more pleadings on the same subject matter have been filed. Almost all substantive entries by the Parties and the Court have related to one of two issues: jurisdiction or summary

dismissal of the meritless claims. The Sanctioned Parties' lack of candor and jurisdictional manipulation has clearly unnecessarily and vexatiously multiplied these proceedings.

Here, while the sanctionable conduct was conceived by Porter/Aeroframe and Brown and Filo before filing the first suit, ATS is only seeking cost and fees associated with its proper removal from state court and the Sanctioned Parties efforts at defeating federal jurisdiction and vacating the dismissal of all claims against ATS—not on the merits but on jurisdictional grounds. Other than proclaiming their innocence, and wrongly suggesting that this Court lacks the authority to award ATS the fees and costs it requests, the Sanctioned Parties raise only four reasons as to why the full amount of fees and costs should not be awarded. ATS will address each of the arguments.

### III.  RESPONSE TO SANCTIONED PARTIES' SPECIFIC OBJECTIONS

#### A.  Mitigation of Damages

The Sanctioned Parties suggest that the amount ATS suggests as an appropriate sanction is unreasonable because ATS failed to mitigate its damages, which according to the Sanctioned Parties is ATS's failure to conduct discovery for a document that would address the prioritizing of recovery between Porter and Aeroframe in favor of the Aeroframe employees. *See* Rec. Doc. 316 at 4; Rec. Doc. 317 at 7. The Sanctioned Parties are once again conflating the issue and ignoring the Court's previous rejection of this argument. First, it is <u>not</u> the prioritization of recovery that was at issue; it was the fact that Brown told the Aeroframe employees that Aeroframe would not defend but would stipulate to their entitlement to wages, penalties and attorney's fees: "Aeroframe has retained counsel from Natchitoches who is [present tense] working cooperatively with us and <u>will not defend against your wage claims</u>." Rec. Doc. 54-1, at 2 (emphasis added). She promised them: "your entitlement to wages, penalties and attorney's

fees <u>will be stipulated to by Aeroframe</u>." *Id.* (emphasis added).

While admittedly ATS did not conduct discovery believing Brown was being completely honest with her clients, had ATS propounded discovery on Aeroframe, as the proper party to so stipulate, it would have been futile because counsel for Aeroframe was unaware of any stipulation to pay the Aeroframe employees' wage claims. Rec. Doc. 54, p. 86. And had it conducted discovery on the other parties, the existence of the promised stipulation would have been denied (despite the fact that the Aeroframe employees conflict waivers required such a stipulation by Porter on behalf of Aeroframe to pay their wages, penalties and attorney's fees[5] and Porter on his own behalf and on behalf of Aeroframe stipulated to pay the Aeroframe employee's wage claims from monies recovered from ATS).

Although representing Porter and knowing that Porter on behalf of Aeroframe had stipulated to paying the Aeroframe employees' wage claims, Brown told the Court on September 24, 2014, "I was overly zealous in the e-mail. I did not have authority to speak on behalf of Roger Porter. And there is not one written settlement agreement, stipulation, nothing indicating that Mr. Porter agrees to what I suggest he is agreeing to in my e-mail. The fact is he has agreed to prioritize the employees' claims since the beginning of time." Rec. Doc. 44, p. 64. Clearly, Brown denied the existence of any written document despite its existence. And she is now saying that Porter, who is Aeroframe, disputes the employees' wage claims, although he denied he disputed the wage claims when he testified in Tennessee. Rec. Doc. 257, att. 23.

Second, in rejecting the Sanctioned Parties' suggestion that ATS was somehow at fault for not conducting discovery, this Court observed: "[w]e know from the amount of parsing that

---

[5] The conflict waiver the Plaintiff Employees signed cannot possibly be valid given the fact that according to the Sanctioned Parties the promised stipulation to pay the employees' wages, penalties and attorney's fees was never executed.

has occurred in this litigation that ATS would have had to stumble upon a magical set of words that would not allow the non-ATS defendants to finagle their way out of production at which point they would undoubtedly claim that the material was protected by privilege just as they did with the email. So while it is true that ATS never requested the June 4, 2014, Cox-Porter Retention Agreement that can hardly be held against ATS." Rec. Doc. 62 at 26. Clearly, the Court has rejected the Sanctioned Parties' mitigation argument.

### B.     Fees and cost related to *Neathammer* and *Jackson*: Approximately $5,500.

During Mr. Vance's deposition, the Sanctioned Parties questioned Mr. Vance about fees and costs associated with the non-Cox Firm cases of *Neathammer v. Aeroframe Services, LLC*, No. 16-cv-1397, and *Jackson v. Aeroframe Services*, LLC, No. 16-cv-1378. Mr. Vance testified in his deposition that he used his business judgment to deduct fees and costs related to *Neathammer* and *Jackson*, to the best of his ability. Rec. Doc. 316-1 at 38-39. Accordingly, fees related to *Neathammer* and *Jackson* should not be an issue with regard to Jones Walker's invoices.

While Mr. Gabb did not deduct his fees and costs related to *Neathammer* or *Jackson*, Aeroframe did file a third-party claim against ATS in those cases and has filed multiple failed motions to remand those cases, making ATS's defense of those claims legitimate. However, should the Court wish to deduct the fees related to *Neathammer* and *Jackson*, a review of the invoices of Plauche, Smith & Nieset, LLC shows that Mr. Gabb worked approximately 22 hours on *Neathammer* and/or *Jackson* and ATS paid approximately $5,500 in fees related to those two cases.

### C.     Fees and costs associated with Fifth Circuit Court of Appeals briefing: Approximately $228,000.

The Sanctioned Parties maintain that this Court cannot impose sanctions for conduct

occurring before other tribunals.[6] In *Chambers v. NASCO, Inc.*, 501 U.S. 32, 58 (1991), the Supreme Court flatly rejected that same argument. Here the Sanctioned Parties have filed four appeals with the Fifth Circuit and were successful on the fourth appeal only because they continued to argue there was adversity and the lack of any agreement between them. This Court has already expressed its belief that had the Fifth Circuit known of the existence of the June 4, 2014 Cox-Porter Retention Agreement its opinion would have been different. Rec. Doc. 290-1 at 26-27. Accordingly, ATS believes it is entitled to an award of attorney's fees and costs in connection with its Fifth Circuit briefing.

> **D. Fees related to ATS's Response to AAR's subpoena: Approximately $18,495.**

The Sanctioned Parties raise the issue of fees and costs associated with ATS's response to a subpoena *duces tecum* issued to it by AAR in connection with Porter's Tennessee litigation. The subpoena is what alerted Mr. Vance to the existence of the Tennessee litigation and the diametrically opposed positions Porter was taken in each case. The fees related to responding to the AAR subpoena were not deducted from the invoices because the documents requested, which involved the same transaction at issue in the captioned case, would require review at some point to defend against Porter and Aeroframe's claims.

The fees associated with responding to the AAR subpoena are included on Jones Walker's invoices dated July 20, 2016 through November 9, 2016. Jones Walker paralegal Camile T. Bourg, Jr. spent 45 hours reviewing documents for relevancy to the subpoena. The

---

[6] As noted, ATS is not seeking fees and costs pre-removal, although it is seeking fees and costs associated with Fifth Circuit briefing and oral argument. Notably, in taking the deposition of Mr. Vance, counsel for the Sanctioned Parties did not ask Mr. Vance if he knew the amount of Jones Walker's fees and cost associated with Fifth Circuit filings and oral argument. Had they done so, Mr. Vance would have testified that to the best of his knowledge approximately $228,000 were incurred in connection with Jones Walker's appellate work on behalf of ATS.

fees billed for Mr. Bourg's time were $7,425. Jones Walker's attorney fees for document review and responding to the AAR subpoena were approximately $7,920, for a total of $15,345.

A review of the invoices of Plauche, Smith & Nieset, LLC from June 1, 2016 through September 26, 2016 shows that Mr. Gabb worked approximately 12.6 hours reviewing documents and responding to the AAR subpoena for which ATS paid approximately $3,150.

### IV. CONCLUSION

ATS requests that the Sanctioned Parties be sanctioned with the reasonable fees and costs associated with their bad faith "willful abuse of the judicial process" and "unreasonable and vexatious multiplication of the proceedings." Further, ATS requests leave of Court to supplement the record with invoices of its future attorneys' fees and costs incurred in connection with its Motion for Sanctions, including, but not limited to, the hearing scheduled for July 22, 2021.

Respectfully submitted,

*/s/ Brett S. Venn*
**R. PATRICK VANCE (LA Bar Roll #13008)**
**BRETT S. VENN (LA Bar Roll # 32954)**
**HEATHER KIRK (LA Bar Roll #35192)**
**Jones Walker LLP**
201 St. Charles Avenue, 49th Floor
New Orleans, LA 70170-5100
Telephone:  (504) 582-8194
Facsimile:  (504) 589-8194
Email:  pvance@joneswalker.com
            bvenn@joneswalker.com
            hkirk@joneswalker.com

**SAMUEL B. GABB (LA Bar Roll # 22378)**
Plauché, Smith & Nieset, LLC
PO Drawer 1705
Lake Charles, Louisiana 70602
Telephone: 337-436-0522
Facsimile: 337-436-9637
Email: sgabb@psnlaw.com

*Attorneys for Defendant, Aviation Technical Services, Inc.*