UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **MICHAEL ASHFORD** | : | **CIVIL ACTION NO. 14-cv-992** |
| | : | |
| **VERSUS** | | **JUDGE WALTER** |
| | : | |
| **AEROFRAME SERVICES, LLC, ET AL.** | : | **MAGISTRATE JUDGE KAY** |

FINAL REPORT AND
<u>RECOMMENDATION ON SANCTIONS</u>

The issue before us is the proper amount of sanctions to be assessed pursuant to a Motion for Sanctions previously filed in this matter. Doc. 159.  The court has already determined that sanctions are appropriate.  Docs. 283, 294.  The remaining question is the sanctions quantum.  The district judge referred this matter to the undersigned for review, report, and recommendation regarding the amount of sanctions in accordance with the provisions of 28 U.S.C. § 636. Doc. 296.

After consideration of the memoranda in support of and in opposition to ATS's suggested amount of sanctions and for the reasons stated below, **IT IS RECOMMENDED** that judgment be rendered herein in favor of *AVIATION TECHNICAL SERVICES, INC.* jointly and severally against *SOMER BROWN*, *THOMAS A. FILO*, *ROGER A. PORTER*, and *AEROFRAME SERVICES, LLC*, in the full and true sum of *ONE MILLION SEVEN HUNDRED FIFTY-ONE THOUSAND ONE HUNDRED THIRTY-SIX AND 94/100 ($1,751,136.94) DOLLARS*,[1] together with interest under 28 U.S.C. § 1961, running from the date of judgment until paid.

---

[1] *See* Doc. 327.

# I.

## BACKGROUND

Aviation Technical Services, Inc. moved for sanctions against plaintiff Michael Ashford; Aeroframe Services, LLC ("Aeroframe"); Roger Porter, attorneys Thomas Filo, Somer Brown, Richard T. Haik, Jr., Joseph P. Williams, Sr., and Richard B. Williams; and the law firms Cox, Cox, Filo & Wilson; Morrow, Morrow, Ryan Basset & Haik; and Williams Family Law, LLC. Doc. 159.  We recommended that the district court grant ATS's Motion for Sanctions in part, reasoning that Aeroframe, Brown, Filo, and Porter (collectively, the "Respondents") had colluded in bringing meritless claims against ATS. Doc. 283.  The district judge adopted those recommendations.  Doc. 294.  We will not reiterate here the findings of fact underlying the sanctions recommendation.  For a detailed recitation of the sanctionable conduct occurring before the Spring of 2020, reference should be made to the original Report and Recommendation on Sanctions and the district judge's adoption of the same.  Docs. 283, 294.

After the district judge adopted our original Report and Recommendation [doc. 294], the remainder of the issues were referred to us to determine an appropriate amount of sanctions. Doc. 296. We gave ATS the opportunity to suggest an amount of sanctions[2] and Respondents have filed memoranda in opposition to ATS's suggestions.[3]  An evidentiary hearing was held on August 10,

---

[2] *See* ATS's Memorandum Suggesting Appropriate Sanctions Against the Sanctioned Parties [doc. 299]; Supplemental Declaration of R. Patrick Vance [doc. 302]; ATS's Supplemental Memorandum Suggesting Appropriate Sanctions Against the Sanctioned Parties [doc. 311]; ATS's Reply to the Sanctioned Parties' Oppositions to ATS's Original and Supplemental Memorandum Suggesting Appropriate Sanctions [doc. 320]; and ATS's Second Supplemental Memorandum Suggesting Appropriate Sanctions Against the Sanctioned Parties [doc. 327].

[3] *See* Respondent Aeroframe Services, LLC's Memorandum in Opposition to ATS' Request for an Award of Monetary Sanctions [doc. 315]; Respondent Roger A. Porter's Opposition to Aviation Technical Services' Memorandum Suggesting Appropriate Sanctions Against the Sanctioned Parties and Supplemental Memorandum [doc. 316]; Respondents Thomas A. Filo and Somer G. Brown's Response to Aviation Technical Services, Inc.'s Memorandum Suggesting Appropriate Sanctions [doc. 317]; Respondents Thomas A. Filo and Somer G. Brown's Response to Aviation Technical Services, Inc.'s Second Supplemental Memorandum Suggesting Appropriate Sanctions Against the Sanctioned Parties [doc. 331]; Respondent Roger A. Porter's Memorandum in Opposition to Aviation Technical Services' Second Supplemental Memorandum Suggesting Appropriate Sanctions Against the Sanctioned Parties [doc.

2021 [docs. 328, 335], in which the court accepted the exhibits offered by ATS in support of its motion for sanctions.  Doc. 328, 329.  Having considered the above-listed submissions, the court is now ready to issue a recommendation.

In issuing this recommendation, the undersigned notes that in the months that followed the original Report and Recommendation on Sanctions, the Respondents have engaged in additional activity that further justifies the sanctions issued today.  This section therefore supplements our original findings of fact to add additional findings regarding this recent activity.  As a result of Respondents' continued "shenanigans,"[4] judicial resources have been wasted in the following ways.  The following section pertains only to activity occurring after spring 2020.

### A. Findings regarding Respondents' conduct following the original sanctions determination

#### 1. *Continued misrepresentations*

In the original report and recommendation on sanctions, we cautioned Respondents that Rule 3.3 of the Rules of Professional Conduct of the Louisiana State Bar Association, as adopted by the United States District Court for the Western District of Louisiana, imposes a duty of candor on attorneys, and that the duty of candor includes the duty not to mislead through errors omission, half-truths, or otherwise.  Doc. 283, pp. 31-32.  Respondents have continued to violate this duty by insisting without foundation that they have been prevented from conducting reasonable discovery in these matters.

---

332]; and Respondent Aeroframe Services, LLC's Supplemental Memorandum in Opposition to ATS's Request for an Award of Monetary Sanctions Including ATS' Supplemental Invoices Filed in the Record [doc. 334].

[4] *Ashford v. Aeroframe Servs., L.L.C.*, 907 F.3d 385, 398 (5th Cir. 2018) ("These cases have more than a whiff of professional impropriety and shenanigans.")(Jones, J., dissenting) (discussing majority opinion ordering remand of "*Ashford I*").

In October 2020, ATS filed a Motion for Summary Judgment as to the claims of the non-ATS parties in *Ashford 2*.[5] 2:19-cv-610, doc. 92. In connection with Ashford's Opposition to the Motion for Summary Judgment, he submitted a Statement of Contested Facts that states "[b]ecause Plaintiffs' have not been able to conduct discovery in response to ATS's motion, they are unable to address many of the facts set forth in detail. Plaintiffs have requested additional time and will supplement his [sic] filing if the Court permits time for discovery." *Ashford 2*, 2:19-cv-610, doc. 96, att. 1. Plaintiffs have not been denied the opportunity to conduct discovery. Although the only discovery that had taken place at that point by any party other than ATS were the Seattle depositions of ATS in 2014, nothing has stopped plaintiffs from conducting discovery in any proceeding since litigation began in 2013 and 2014.

In March of 2021, Aeroframe filed a Motion for Leave to File Request to Conduct Discovery Relative to the Wage Claims against Aeroframe Services, LLC. *Ashford 2*, 2:19-cv-610, Doc. 106. Aeroframe claimed to need court permission to conduct the discovery because it interpreted a 2017 order and memorandum ruling in *Ashford 1* to have prohibited discovery, saying, "it appears that the Court initially authorized the parties to begin discovery, but then entered an order that appears to have reversed its prior decision." *Ashford 2*, 2:19-cv-610, Doc. 106, pp. 1-2 (referencing *Ashford 1*, 2:14-cv-992, docs. 103, 104). In ruling on the request to conduct discovery, the court noted that nothing in either referenced ruling [docs. 103, 104] would cause anyone to think that the court curtailed discovery *Ashford 1* or any other matter. We clarified that, in fact, in doc. 103, "the district court partially granted a request to consolidate the cases but allowed the consolidation for discovery purposes only and further stated that the parties 'may begin

---

[5] *Ashford v. Aeroframe Servs., LLC*, No. 2:19-cv-610 ("*Ashford 2*") Doc. 92 (W.D. La. Oct. 6, 2020).

discovery immediately.'" *Ashford 2*, 2:19-cv-610, Doc. 109, p. 2 (citing *Ashford 1*, 2:14-cv-992, doc. 103, p. 4).

Aeroframe's March 2021 motion to conduct discovery in *Ashford 2* was granted in part and denied in part.[6]  *Ashford 2*, 2:19-cv-610, Doc. 110.  In short, the court expressed skepticism as to why it had taken Aeroframe several years to request the information and why the information could not be obtained via discovery directed to Aeroframe's employees.  Rather than compelling ATS to produce the requested information at its own expense, the court ordered that Aeroframe could contact the litigation hold specialist retained by ATS who had possession of the requested information, and Aeroframe could pay to have the responsive information reproduced.  *Ashford 2*, 19-cv-601, docs. 109, 110.  Aeroframe never appealed this ruling to the district court.

Despite the court's explicit clarification that nothing had curtailed discovery in either of the *Ashford* cases and that the court was allowing the discovery at Aeroframe's expense, Aeroframe then characterized the discovery ruling as a "refus[al] to allow discovery upon opposing party, ATS."  *Cooley v. Aeroframe Servs., LLC et al.*, 2:14-987, Doc. 80, p. 5 (responding to ATS's Motion for Summary Judgment).  As a result, Aeroframe claimed to be "unable to confirm or deny the exact amount of wages currently due and owed to each plaintiff."[7]  *Id.*  Aeroframe then

---

[6] As explained in the Memorandum Ruling accompanying the discovery order, Aeroframe had requested that ATS copy Aeroframe business records found on hard drives in ATS's possession via operation of the Strict Foreclosure Agreement signed by Aeroframe and ATS.  Aeroframe claimed to need its business records to defend itself against the claims of the plaintiff-employees.  Since ATS was a stranger to the claim between plaintiff-employees and Aeroframe—the claim for which the discovery was allegedly sought—we ruled that Aeroframe could contact the litigation hold specialist retained by ATS who had possession of the computers and have copies made of the hard drives at ATS's expense.  That is to say, the court declined to order ATS to pay for the cost of replication of the hard drives that Aeroframe claimed it needed to defend against its former employees' claims.  *Ashford 2*, 19-cv-006, doc. 109.

[7] This, despite the fact that the interests of Aeroframe and the employee-plaintiffs have been aligned from the beginning of the suit.  *See* Doc. 283, pp 27-28.

compounded this sanctionable and self-serving mischaracterization of the court's ruling by adopting its *Cooley* opposition in 12 other cases.[8]

### 2. Continued waste of judicial resources through synchronized, multiplied, and/or ill-considered pleading

In the original ruling on sanctions, we noted that the proclivity of Respondents to file "separate motions and memoranda throughout this proceeding that all made the same arguments [ . . . ] does indeed constitute unreasonable and vexations multiplication of the proceedings." Doc. 283, p. 35. They continued to do so after the May 29, 2020, sanctions ruling. For example, after ATS moved to consolidate all *Aeroframe* cases involving the Cox Firm into *Ashford 2* for purposes of consideration of the ATS Motion for Summary judgment (doc. 72),[9] Porter, Ashford, and Aeroframe, each opposed on the basis that the court lacks subject matter jurisdiction. Docs. 79, 83, and 84. Each also filed a Motion for Certificate of Appealability on the denial of remand in *Ashford 2*. Doc. 73 (Ashford), doc. 74 (Porter), doc. 75. (Aeroframe).

Respondents' carelessness also exacerbated the inefficiency resulting from the unnecessarily multiplied leadings. In June 2021, the court issued a judgment in each formerly-consolidated case, adopting the Report and Recommendations granting in part and denying in part ATS's motion for summary judgment. *Ashford 2*, 2:19-cv-610, Doc. 119. In response, the plaintiffs filed a Motion for Entry of Judgment in 15 *Aeroframe* dockets.[10] *See, e.g.*, *Cooley*, 2:14-

---

[8] *See* 14-cv-983, doc. 102 (*Warner*); 14-cv-984, doc. 91 (*Adams*); 14-cv-985, doc. 93 (*Boring*); 14-cv-986, doc. 96 (*Cleaves*); 14-cv-988, doc. 91 (*Gallow*); 14-cv-989, doc. 83 (*Decolongon*); 14-cv-990, doc. 82 (*Blanton*); 14-cv-991, doc. 82 (*Rackard*); 14-cv-2323, doc. 78 (*Morvant*); 14-cv-2324, doc. 79 (*Coley*); 14-cv-2325, doc. 80 (*Cogdill*); 14-cv-2538, doc. 92 (*Barreda*).

[9] The motion was granted as to all but 16-1512, Day. Doc. 87.

[10] *See* 14-cv-983, doc. 89 (*Warner*); 14-cv-984, doc. 79 (*Adams*); 14-cv-985, doc. 80 (*Boring*); 14-cv-986, doc. 84 (*Cleaves*); 14-cv-987, doc. 85 (*Cooley*); 14-cv-988, doc. 79 (*Gallow*); 14-cv-989, doc. 72 (*Decolongon*); 14-cv-990, doc. 71 (*Blanton*); 14-cv-991, doc. 78 (*Rackard*); 14-cv-992, doc. 321 (*Ashford 1*); 14-cv-2323, doc. 66 (*Morvant*); 14-cv-2324, doc. 67 (*Coley*); 14-cv-2325, doc. 68 (*Cogdill*); 14-cv-2538, doc. 80 (*Barreda*); and 19-cv-610, doc. 122 (*Ashford*).

cv-987, Doc. 85.  In each motion plaintiffs claim that "All issues as to Plaintiffs have been decided" and "The Court's recent judgment, resolves each and every claim of the Plaintiffs in the consolidated cases [ . . . ] leaving no issue to be determined with respect to the original Plaintiffs."[11] *See id*.  In each case but *Ashford*, the district court, relying on plaintiffs' assertions that all issues between plaintiffs and defendants were resolved, granted the motion.  *See, e.g.*, *Cooley*, 2:14-cv-987, Doc. 87.  The following day, the plaintiffs moved to amend the judgments they had requested because, despite the language of their motions, not all issues had been resolved.  *See, e.g.*, *Cooley*, 2:14-cv-987, Doc. 91. The court then had to rescind these orders and deny the motions to certify.  *See, e.g.*, *Cooley*, 2:14-cv-987, Docs. 91, 92.  Despite the lack of final judgment, plaintiffs then filed a notice of appeal in each of these cases, a total of 14 appeals.  Each appeal was dismissed for lack of jurisdiction.  *See, e.g.*, *Cooley*, 2:14-cv-987, Doc. 97.

In isolation, and on a single docket, the episode just recounted could be dismissed as an unfortunate error, but when viewed alongside other episodes of carelessness[12] and disregard for the court's attempts to inject order into the proceedings,[13] and in the context the unnecessary

---

[11] Aeroframe and Porter each filed an identical motion in *Ashford 2* only, merely substituting their own names in the place of "plaintiffs."  *Ashford 2*, 2:19-cv-610, doc. 124 (Aeroframe), doc. 127 (Porter).

[12] In another example of carelessness:  in attempting to bring these matters to a close, the court ordered (in each case except *Cooley*, *Neathammer*, *Jackson*, and *Day*) plaintiffs to file motions for summary judgment against Aeroframe or face dismissal for failure to prosecute.  *See, e.g.*, *Barreda et al v. Aeroframe Services L.L.C. et al.,* 2:14-cv-2538, doc. 88.  Rather than taking the court's suggestion that Plaintiffs and Aeroframe could save themselves and the court the trouble by simply confecting an agreement as to how much Aeroframe owed plaintiffs, plaintiffs filed individual motions for summary judgment adopting their arguments in *Cooley*.  *See, e.g.*, *Barreda et al v. Aeroframe Services L.L.C. et al.,* 2:14-cv-2538, doc. 88.  The initial filings submitted affidavits that simply stated what plaintiffs had earned while working for Aeroframe, and left it to the court to do the math with respect to the full value of their claims.  *See, e.g.*, *Barreda et al v. Aeroframe Services L.L.C. et al.,* 2:14-cv-2538, doc. 89 (and attachments).  The court ordered amendment in each matter, requiring that "plaintiffs are to amend their memorandum in support of their motion to set forth the total amount claimed by each. The total amount is to be further broken down by for wages, for penalties, and for attorney fees only. The court will not do any math for plaintiffs."  *See, e.g.*, *Barreda et al v. Aeroframe Services L.L.C. et al.,* 2:14-cv-2538, doc. 95.  Although the resulting submissions allowed the court to grant summary judgment as to some of the individual plaintiffs' claims, numerous flaws (which will not be detailed here) made that impossible for some plaintiffs.  *See, e.g.*, *Barreda et al v. Aeroframe Services L.L.C. et al.,* 2:14-cv-2538 (February 2022 order on motion for summary judgment).

[13] Each of the Respondents violated a direct order to refrain from raising subject matter jurisdiction as a defense to ATS's motion for summary judgment on the merits.  In preparation for consideration of ATS's motion for summary

procedural complexity of these matters, this conduct is not excusable.   Plaintiffs' counsel's carelessness also supports our previous conclusions that counsel was not truly interested in the claims of these plaintiff-employees but instead was focused on the overall plan to get to ATS's deep pockets.

### B.  Today's Recommendation

To summarize, we recommend today that the entirely of ATS's legal fee submissions from May 1, 2014, to July 31, 2021, be levied as a sanction against the Respondents, jointly and severally.  We take this extraordinary step for the reasons outlined below.  Respondents' continued indifference to their obligation to ensure the efficient administration of justice[14] reassures us that this sanction is the least restrictive means of correcting this ongoing behavior and compensating ATS   for   needlessly   generated   litigation   expenses.    It   is   difficult   to   succinctly   summarize

---

judgment on the merits in the now consolidated case [*Ashford 2*, 2:19-cv-610, doc. 92], we issued an admonition to the parties and forbade them from making any argument as to subject matter jurisdiction.  Doc. 95.  The order stated:

> [Regarding ATS's Motion for Summary Judgment]: No response to this motion filed by any party is to contain any argument as to this court's subject matter jurisdiction. Argument and evidence to support that argument is to be limited to the merits. All non-ATS litigants, by timely moving for remand, did all that was required to preserve objections to removal. Caterpillar Inc. v. Lewis, 519 U.S. 61; 117 S. Ct. 467, 475; 136 L.Ed.2d 437 (1996). Any further attempts to argue this court's subject matter jurisdiction will be considered a violation of this order and will be ignored.

*Id.*  As explained in the ruling on the motion for summary judgment, "[t]his was done to stop the endless regurgitation by non-ATS litigants of their claims that we lack subject matter jurisdiction to consider the motion—claims that they have made at every turn and in unison—and to limit them to the merits (or lack thereof) of their claims against ATS. This direct order was violated by each non-ATS litigant."   *Ashford 2*, 2:19-cv-610, Doc. 111, p. 9.

[14] *See* FED. R. CIV. P. 1 (amended 2015).  As amended in 2015, Rule 1 charges both the court and the parties to employ the Federal Rules of Civil Procedure to "to secure the just, speedy, and inexpensive determination of every action and proceeding."   The Advisory Committee notes clarify that Rule 1 was "amended to emphasize that just as the court should construe and administer these rules to secure the just, speedy, and inexpensive determination of every action, so the parties share the responsibility to employ the rules in the same way. Most lawyers and parties cooperate to achieve these ends. ***But discussions of ways to improve the administration of civil justice regularly include pleas to discourage over-use, misuse, and abuse of procedural tools that increase cost and result in delay***. Effective advocacy is consistent with -- and indeed depends upon -- cooperative and proportional use of procedure.   This amendment does not create a new or independent source of sanctions. Neither does it abridge the scope of any other of these rules." (emphasis added).

Respondents' course of conduct that necessitates these sanctions, which is why repeated reference will be made to the original Report and Recommendation on sanctions.  Doc. 283.

We have, over the years, noticed an increased willingness of attorneys to cut corners on truth, to parse and palter in order to hide information unfavorable to their position.  Whether or how there will be a reversal of this trend is unknown, but one thing that cannot change is that practitioners of the law must be held to the highest standard of conduct.  While it is true that the court exercises certain inherent powers by virtue of its role as a forum of justice, it is also true that the court is inherently reliant on the good faith and candor of those who practice law.  The integrity of the court as a forum of justice rises or falls with the integrity of the legal profession.  Sanctions like this are designed to deter similar conduct of others beside those being sanctioned.  *See Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 78-80 (5th Cir. 2011). The conduct sanctioned today falls far below the expected standards of good faith and professionalism required to practice law before this forum.

## II.
### APPLICABLE LAW

The original Report and Recommendation on Sanctions sets forth the applicable law in detail.  Docs. 283, 294.  We reiterate the general principles underpinning the decision to impose sanctions as a preface to the discussion of how this law applies to Respondents' more recent behavior.

There are three important mechanisms by which federal courts impose sanctions: FED. R. CIV. P. 11, 28 U.S.C. § 1927, and the court's inherent powers.  Rule 11 of the Federal Rules of Civil Procedure allows a court to impose sanctions on an attorney or law firm for violations stemming from the attorney's improper submission to the court of pleadings, motions, or other papers in violation of Rule 11(b).  Rule 11 sanctions may be imposed against any person or entity

who was responsible for the violation, including non-attorneys.  *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 111 S. Ct. 922, 929 (1991).  Section 1927 permits sanctions for the excess costs, expenses and attorney's fees reasonably incurred because of an attorney's unreasonable and vexatious multiplication of the  proceedings.  28 U.S.C. § 1927.  These sanctions may only be imposed upon attorneys.  *Browning v. Kramer*, 931 F.2d 340, 344 (5th Cir. 1991).  Imposition requires "a showing of improper purpose."  *F.D.I.C. v. Calhoun*, 34 F.3d 1291, 1300 (5th Cir. 1994).

Outside of Rule 11 and Section 1927, Federal courts possess the inherent power to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases" giving them the authority to "fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 111 S. Ct. 2123, 2132-33 (1991).  Courts may use their inherent power to sanction when the parties' conduct is not controlled by other mechanisms.  *Smith v. Am. Founders Fin., Corp.*, 365 B.R. 647, 680-81 (S.D. Tex. 2007) (citing *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.,* 2 F.3d 1397, 1408 (5th Cir.1993)).  A court should use its inherent power to sanction "only when 'in the informed discretion of the court, neither the statute nor the Rules are up to the task ... [.]'" *Allstate Ins. Co. v. Mader*, 201 F. App'x 261, 265 (5th Cir. 2006)(quoting *Chambers*, 111 S. Ct. at 2136).

Sanctions issued under the court's inherent authority are limited in value to the harm caused by the sanctioned conduct, but they may be imposed on any individual responsible for that conduct. The sanction should be specifically tailored to redress the harm suffered by the aggrieved party. *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (noting that under inherent power, "the court can shift only those attorney's fees incurred because of the misconduct at issue"). The sanction imposed should be the "least severe sanction adequate to achieve the desired result."

*Scaife v. Associated Air Ctr. Inc.,* 100 F.3d 406, 412 (5th Cir. 1996).  However, sanctions under the inherent authority can be levied against any actor responsible for the misconduct, including non-attorneys. *See Bynum v. Am. Airlines, Inc.,* 166 F. App'x 730, 735 (5th Cir. 2006) ("One aspect of this inherent power is the power to impose sanctions, including attorneys' fees, on litigants for conduct that is in bad faith, vexatious, wanton, or undertaken for oppressive reasons."); *Clark v. Mortenson*, 93 Fed. Appx. 643, 652 (5th Cir. 2004) (citing *Chambers*, 111 S. Ct. at 2135-36).   In determining whether a party or counsel has acted in bad faith, "[c]ourts may make credibility determinations to resolve whether such misconduct has occurred." *Smith v. Am. Founders Fin., Corp.*, 365 B.R. 647, 681 (S.D. Tex. 2007) (citing *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 808-09 (5th Cir. 2003); *Carroll v. Jaques Admiralty Law Firm, P.C.*, 110 F.3d 290, 293 (5th Cir. 1997); *In re United Markets Int'l, Inc.*, 24 F.3d 650, 655 (5th Cir. 1994)).

A court should use its inherent power to sanction only those individuals who have acted in bad faith or willfully abused the judicial process.  "A decision to invoke the inherent power to sanction requires a finding of 'bad faith or willful abuse of the judicial process [ . . . ]'" *In re Moore*, 739 F.3d 724, 729 (5th Cir. 2014) (quoting *Gonzalez v. Trinity Marine Grp., Inc.*, 117 F.3d 894, 898 (5th Cir. 1997)); *but see Blanco River, LLC v. Green*, 457 Fed. Appx. 431, 438 (5th Cir. 2012) (quoting *In re Sealed Appellant*, 194 F.3d 666, 671 (5th Cir. 1999)) ("[w]hen bad faith is patent from the record and specific findings are unnecessary to understand the misconduct giving rise to the sanction, the necessary finding of 'bad faith' may be inferred.") (alteration original, citation omitted).  The court has already determined that each of the Respondents acted in bad faith.  Doc. 283, p. 35, Doc. 294.

The court recommends the imposition of sanctions today pursuant to its inherent powers because Rule 11 and Section 1927 are inadequate[15] to sanction the pervasive conduct at issue here, and because the court seeks to vindicate its prerogative to manage its docket in an orderly and expeditious way, finding today's ruling "essential to preserve the authority of the court."  *Scaife v. Associated Air Ctr. Inc.*, 100 F.3d 406, 411 (5th Cir. 1996).  The court exercises these "inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Dietz v. Bouldin*, 136 S. Ct. 1885, 1891 (2016) (quoting *Link v. Wabash R.R. Co.*, 82 S. Ct. 1386 (1962)).

## III.
### APPLICATION OF LAW TO ADDITIONAL FACTS OUTLINED ABOVE AND IN EVIDENTIARY HEARING

In the original Report and Recommendation, we noted that the Respondents made misrepresentations in this court and in the Fifth Circuit that there was "no writing" demonstrating that they were all aligned despite a written agreement between the Cox Firm and Porter, wherein Porter stipulated that he and Aeroframe would pay all Aeroframe employees' claims out of any funds received by him or Aeroframe from the lawsuit. Doc. 283, p. 26. We also found that the Respondents had engaged in forum shopping by filing "multiple lawsuits against the same defendants alleging identical causes of action" in several different parishes. *Id*., p. 35. Those actions constituted "unreasonable and vexatious multiplication of the proceedings" entitling ATS to costs, expenses, and attorney fees under 28 U.S.C. § 1927. *Id*.  We additionally recommended

---

[15] In the original Report and Recommendation on Sanctions, we noted, "As our finding of bad faith is based on conduct that occurred throughout the course of this litigation, we do not find Rule 11 Sanction to be appropriate."  Doc. 283, p. 36, n. 34 (citing *Childs v. State Farm Mut. Auto. Ins. Co.,* 29 F.3d 1018, 1024 (5th Cir. 1994)); Doc. 294.  That decision also found that Respondents' "each filing separate motions and memoranda throughout this proceeding that all made the same arguments as well as their decision to file multiple law suits against the same defendants alleging identical causes of action in furtherance of their forum shopping does indeed constitute unreasonable and vexatious multiplication of the proceedings as contemplated by 28 U.S.C. § 1927 [ . . . ].  *Id.*, p. 35.  However, sanctions under 28 U.S.C. § 1927 may only be imposed upon attorneys, and the statute does not authorize a "wholesale reimbursement" of all or a portion of a party's fees.  *Browning v. Kramer*, 931 F.2d 340, 344-45 (5th Cir. 1991).

sanctions due to the parties' violation of Rule 3.3 and Rule 1.7 of the Louisiana Rules of Professional Conduct, which are incorporated into the Western District of Louisiana's Local Rules through Rule 83.2.4. *Id.*, pp. 36-37.  Notably, we made an explicit finding that the Respondents had acted in bad faith "throughout the course of this litigation" and that the entire litigation was pursued solely for the benefit of Porter, Aeroframe, Filo, and Brown. *Id.*, p. 35-36.  Today we further find for the reasons detailed in Section I.A above, that the sanctioned conduct by Respondents has been ongoing through the present.

## IV.
### SOLIDARITY AND QUANTUM

ATS seeks an award of the full sum of its attorneys' fees and costs that ATS would not have incurred but for the misconduct of the Respondents, totaling $1,751,136.94 through August 10, 2021, when it filed its second supplemental memorandum suggesting appropriate sanctions. Doc. 327.  ATS suggests that the court should impose the sanctions award jointly and severally against the Respondents.  Doc. 299, p. 8.

"Because of their very potency, inherent powers must be exercised with restraint and discretion."  *Chambers v. NASCO, Inc.*, 111 S. Ct. 2123, 2132 (1991).  Sanctions imposed by this court "when imposed pursuant to civil procedures, must be compensatory rather than punitive in nature." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017).  "A sanction counts as compensatory only if it is 'calibrate[d] to [the] damages caused by' the bad faith acts on which it is based." *Id.* (quoting *Int'l Union, United Mine Workers v. Bagwell*, 114 S. Ct. 2552, 2561 (1994))(alterations original).

Generally, when a federal court exercises the inherent authority to sanction bad-faith conduct by ordering a litigant to pay the opposition's legal fees, "such an order is limited to the fees the innocent party incurred solely because of the misconduct—or put another way, to the fees

that party would not have incurred but for the bad faith. A district court has broad discretion to calculate fee awards under that standard." *Goodyear*, 137 S. Ct. at 1183-84.  In assessing which fees are attributable to the bad-faith conduct, the connection needs to be causal, rather than merely temporal.  *Goodyear*, 137 S. Ct. at 1189.  The court enjoys discretion with regard to how to tease out that causal connection:

> The court's fundamental job is to determine whether a given legal fee—say, for taking a deposition or drafting a motion—would or would not have been incurred in the absence of the sanctioned conduct. The award is then the sum total of the fees that, except for the misbehavior, would not have accrued. But as we stressed in *Fox,* trial courts undertaking that task "need not, and indeed should not, become green-eyeshade accountants" (or whatever the contemporary equivalent is).  "The essential goal" in shifting fees is "to do rough justice, not to achieve auditing perfection." Accordingly, a district court "may take into account [its] overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." The court may decide, for example, that all (or a set percentage) of a particular category of expenses—say, for expert discovery—were incurred solely because of a litigant's bad-faith conduct. And such judgments, in light of the trial court's "superior understanding of the litigation," are entitled to substantial deference on appeal.

*Goodyear*, 137 S. Ct. at 1187 (alterations and quotations original; internal citations omitted).  In *Goodyear*, the United States Supreme Court absolved the district courts of the need to achieve "auditing perfection" in considering the causal link between particular legal fees and the sanctioned conduct.  A court may make a blanket award of the innocent party's entire legal fees and costs in the rare case in which an opponent's entire course of conduct is exceptional and taints the whole legal proceeding with bad faith.  *Goodyear*, 137 S. Ct. at 1187-88 (discussing *Chambers v. NASCO, Inc.*, 111 S. Ct. 2123 (1991)).

In *Goodyear,* the United States Supreme Court examined *Chambers v. NASCO, Inc.* as an example of the type of case in which a party's entire course of conduct constitutes a "sordid scheme" to misuse the judicial process, warranting such a blanket award of attorney's fees.  *Id.* at

1187-88 (quoting *Chambers v. NASCO, Inc.*, 111 S. Ct. 2123, 2139 (1991)).[16]   In *Chambers*, a defendant and his attorney engaged in a course of unethical conduct, including misrepresentations to the court and flouting of court orders, to defeat the court's jurisdiction and undermine a valid claim stemming from an agreement to sell that the defendant refused to honor.  *Chambers*, 111 S. Ct. at 2128-31.  Distinguishing *Chambers* from the facts then before the Court, the *Goodyear* Court held that a blanket award of that sort was inappropriate where the sanctioned conduct stemmed from a discrete discovery abuse:  non-disclosure of certain test results plaintiffs had requested early in the litigation and that, arguably, would have led to early resolution of the case.  137 S. Ct. at 1184-85, 1189-90.  The *Goodyear C*ourt emphasized that the correct legal standard required the court to find a "but for" causal link between the discrete misconduct and fees awarded, and that court could not sidestep this requirement even if district court found that the misconduct rose "to a truly egregious level."  *Id.* at 1189 (citation omitted).

Considering *Chambers* and *Goodyear* together, the court finds that Respondents' actions in this case—and in the 14 identical lawsuits filed in various courts—embody the type of exceptional litigation which justifies the shifting of all or a portion of a party's fees "in one fell swoop" because the entire course of conduct of the Respondents was part of a sordid scheme to deprive this court of subject matter jurisdiction, deny ATS the forum of its choice,[17] impede this court's ability to manage its own affairs expeditiously, and hamstring ATS by forcing it to defend

---

[16] It is interesting to note that, like this matter, *Chambers* originated in the Lake Charles Division of the United States District Court for the Western District of Louisiana.

[17] Respondents' arrangement of this matter calls to mind Justice Alito's dissent in *Home Depot U. S. A., Inc. v. Jackson*, 139 S. Ct. 1743 (2019), in which he discussed a scholarly article outlining a "loophole" or "tactic" a plaintiff might use to avoid federal court jurisdiction in the context of the Class Action Fairness Act:  "[t]hey could raise their class-action claim as a counterclaim and 'hope that CAFA does not authorize removal.' [ . . . ] In a single stroke, the article observed, a defendant's routine attempt to collect a debt from a single consumer could be leveraged into an unremovable attack on the defendant's 'credit and lending policies' brought on behalf of a whole class of plaintiffs—all in the very state courts that CAFA was designed to help class-action defendants avoid."  *Id.* at 1754–55 (Alito, J., dissenting).   Here, the Respondents are similarly clever manipulators of pleadings who colluded to deprive ATS of its right to litigate in federal court by manufacturing the appearance of non-diverse litigation.

against unnecessarily multiplied proceedings that were meritless.[18]  *See Goodyear*, 137 S. Ct. at 1187-88 (discussing *Chambers*).  Rather than a discrete abuse of the discovery process that the Court evaluated in *Goodyear*, these matters were marked from the beginning by a determination to tip the scales of justice in favor of Respondents.

Having determined that the Respondents acted in bad faith as the court has done here, a court may levy sanctions against a party and its attorney(s) jointly and severally.  *See Allstate Ins. Co. v. Mader*, 201 F. App'x 261, 265 (5th Cir. 2006) (holding that various mechanisms, including the inherent power, permit a court to hold an attorney jointly liable for sanctions with his clients, but only if the attorney has been shown to have engaged in bad faith conduct).  We are mindful that parties with no involvement in management of litigation should not be sanctioned in solido. *Clements v. Foti*, No. 85-2155, 1987 WL 20117, at *3 (E.D. La. Nov. 18, 1987), *aff'd in part*, 869 F.2d 1485 (5th Cir. 1989).  Here, however, Respondents have each been found to have actively contributed to the sanctioned conduct.  Docs. 283, 294.

### A.  ATS's fee submissions and argument supporting blanket award of fees and costs

ATS submits that all of its legal fees from May 1, 2014, through July 31, 2021, totaling $1,751,136.94, would not have been incurred but for the sanctionable, bad-faith conduct of the Respondents.  Docs. 299, 311, 327.  We agree.  There is no single transgression that gave rise to some discernable set of ATS's litigation expenses.  All of Respondents' efforts to arrange this litigation to their satisfaction—starting with their decision to simultaneously represent both Roger Porter and Aeroframe's former employees when in fact Aeroframe was the alter ego of Roger

---

[18] *Ashford v. Aeroframe Servs., LLC*, No. 2:19-CV-610, 2021 WL 2389381, (W.D. La. Apr. 29, 2021) ("*Ashford 2*"), *report and recommendation adopted*, No. 2:19-CV-610, 2021 WL 2383912 (W.D. La. June 10, 2021) (recommending summary judgment in favor of ATS against non-ATS litigants in consolidated matters); *see also Ashford v. Aeroframe Servs. LLC*, No. 2:14-CV-00992, 2017 WL 2293109, at *1 (W.D. La. May 24, 2017), *vacated and remanded*, 907 F.3d 385 (5th Cir. 2018) (granting ATS's motion for summary judgment against Ashford, Aeroframe, and Porter, before remand of matter).

Porter—were tainted by a bad-faith effort to gain advantage over ATS by whatever means necessary, with little or no regard to candor, professionalism, or judicial economy. "A party should not be penalized for maintaining an aggressive litigation posture. 'But advocacy simply for the sake of burdening an opponent with unnecessary expenditures of time and effort clearly warrants recompense for the extra outlays attributable thereto.'" *Batson v. Neal Spelce Assocs., Inc.*, 805 F.2d 546, 550 (5th Cir. 1986) (quoting *Lipsig v. Nat'l Student Mktg. Corp.*, 663 F.2d 178, 181 (D.C. Cir.1980)).

ATS submitted evidence in support of this amount, consisting of declarations by R. Patrick Vance[19] and Samuel B. Gabb,[20] both counsel for ATS, and the contemporaneous of billing records of their law firms. The redacted invoices of Jones Walker LLP from May 1, 2014, through July 31, 2021,[21] and the invoices of Plauché, Smith & Nieset, LLC from September 1, 2014, through July 31, 2021[22] are among the exhibits attached to Mr. Vance's and Mr. Gabb's declarations. Jones Walker LLP's invoices are submitted with some redactions of attorney-client privileged information. ATS also redacted and deducted fees for work not directly related to these cases for example, time on audit reports or presentations.

---

[19] Declarations of R. Patrick Vance:  Doc. 299, att. 1; doc. 302; doc. 311, att. 1; doc. 327, att. 1.

[20] Declarations of Samuel B. Gabb:  Doc. 299, att. 12; doc. 311, att. 4; doc. 327, att. 4.

[21] Jones Walker Invoices:  Doc. 299, att. 10 (spreadsheet of JW invoices dated 6/12/14 through 8/4/20); doc. 299, att. 11 (JW invoices for services rendered 5/1/14 to 7/31/20); doc. 311, att. 2 (spreadsheet of JW invoices dated 10/1/20 to 6/4/21 and showing corrections to original spreadsheet); doc. 311, att. 3 (JW invoices for services rendered 8/2/20 to 5/7/21); doc. 327, att. 2 (spreadsheet of JW invoice dated 8/6/21 and summarizing prior spreadsheets); doc. 327, att. 3 (JW invoice for services rendered 6/1/2021 to 7/30/21).

[22] Plauché, Smith & Nieset invoices:  Doc. 299, att. 13 (spreadsheet of PSN invoices dated 12/10/14 to 7/21/20); doc. 299, att. 14 (PNS invoices for services rendered 9/2/14 to 6/30/20); doc. 311, att. 5 (spreadsheet of PSN invoices dated 10/1/20 to 6/15/21); doc. 311, att. 6 (PSN invoices for services rendered 7/1/20 to 5/28/21); doc. 327, att. 5 (spreadsheet of PSN invoices dated 7/12/21 to 8/9/21 and summarizing prior spreadsheets); doc. 327 att. 6 (spreadsheet of PSN invoices for services rendered 6/1/21 to 7/15/21).

**1.  The Declarations of R. Patrick Vance of Jones Walker, LLP**

ATS seeks sanctions reimbursing ATS for the Jones Walker's team's 4,498.45 hours of billed work performed by multiple timekeepers.  Doc. 327.  Mr. Vance declared that ATS sought his firm's assistance after the plaintiffs filed the first several lawsuits because of the threat of treble damages and  increasing potential liability.  Doc. 299, att. 1, p. 2.  The assistance of a large firm was thought necessary because of the number of suits, which were pending in multiple parishes.  *Id.*  Mr. Vance's hourly rate when he first enrolled in these cases was $450; it later increased to $525.  *Id.*  Mr. Vance described the excellent credentials and experience of himself and the Jones Walker attorneys who assisted with the case; he listed their hourly rates, which ranged from $220 (increased to $260) to $360 (increased to $395).  *Id.* pp. 3-4.

Mr. Vance submitted and attached evidence concerning the hourly rate for a senior partner with his degree of experience in the Lake Charles area.  The evidence included summaries of caselaw concerning fee submissions from attorneys practicing in this area, as well as declarations from his personal inquiries.   Doc. 299, att. 1, pp. 4-6 (and referenced attachments).   The submissions suggest that the hourly rate for senior partners with 20+ years' experience practicing in this area ranges from $275 to $450.  The declaration notes that respondent Filo was recently awarded fees based upon an hourly rate exceeding $2,000 per hour.  *See Cox, Cox, Filo, Camel & Wilson, LLC v. Louisiana Workers' Comp. Corp.*, 318 So. 3d 964, 969 (La. App. 3 Cir. 2021), *writ granted*, 319 So. 3d 279.

Mr. Vance's declarations attached a spreadsheets and invoices showing Jones Walker's billings on these matters, partially redacted for attorney-client privilege.[23]  He also explained that the billings did not include time spent on initial state-court responsive pleadings or in the early

---

[23] *See* nn. 19, 21, *supra*

deposition of ATS's corporate representative before Mr. Vance became suspicious about the motivation behind the suits.  Doc. 299, att. 1, p. 7.

### 2.  The Declarations of Samuel B. Gabb of Plauché, Smith & Nieset, LLC

ATS also seeks sanctions reimbursing ATS for the legal fees and costs incurred by Lake Charles law firm Plauché, Smith & Nieset, LLC, whose multiple timekeepers—primarily Mr. Gabb—collectively billed 597.7 hours over the course of the litigation.  Doc. 327.  ATS submitted declarations of Samuel Gabb, a senior partner at that firm, who declared that from December 10, 2014 to July 31, 2021, his firm billed ATS's insurer $150,769.88 in fees and $2,365.98 in taxable costs.  Doc. 299, att. 12, pp. 1-2; Doc. 311, att. 4; Doc. 327, att. 4.  Mr. Gabb's declarations attach invoices and explanatory spreadsheets.[24]

### B. *Respondents' responses to ATS's submissions*

In response to ATS's submissions, Respondents make several arguments.  Respondents argue that sanctions are not appropriate here because Aeroframe and its counsel presented the court with good-faith arguments about which there was a genuine dispute, and that the sanctions are based on a misunderstanding or mischaracterization of the words Filo and Brown used in this court and before the Fifth Circuit.  *See, e.g.*, Doc. 315, p. 7, 10-13.  The original Report and Recommendation on sanctions explicitly or implicitly rejects those arguments, and they will not be addressed in great detail here.  Docs. 283, 294.  However, the court wishes to place special emphasis on the fact that Respondents are still singing—with no hint of self-consciousness—the old refrain that they have done nothing wrong.

Respondents also argue that ATS has submitted an insufficiently particularized claim for attorneys' fees, that ATS unnecessarily drove up litigation costs and failed to mitigate its own

---

[24] *See* nn. 20, 22, *supra*.

damages, and that Rule 11 and 28 U.S.C. § 1927 limit the sanctions quantum and scope.  The court rejects these arguments but addresses each below.

1. **Respondents argue that there was a good-faith basis for their jurisdictional arguments, and that sanctions are therefore inappropriate.**

Each opposition memorandum features the argument that the Respondents had a good faith basis for the substantive arguments raised against ATS in connection with the  jurisdictional dispute that brought them to the Fifth Circuit for the *Ashford 1* remand decision.  *Ashford v. Aeroframe Servs., L.L.C.*, 907 F.3d 385 (5th Cir. 2018)("*Ashford 1*").   Respondents argue, therefore, that it would be inappropriate to issue sanctions for any work performed in connection with the jurisdictional dispute.  *See* Doc. 315, pp. 7-10, 14-15 ("ATS is even seeking reimbursement of attorney fees relative to the legitimate jurisdictional defenses of Aeroframe.");  Doc. 317, p. 8.

Aeroframe notes that the Fifth Circuit agreed with their contention that there was no jurisdiction in *Ashford 1*.  Doc. 315, p. 7.  Porter suggests that "ATS is contending that the respondent parties and their counsel should have ignored the fact that the Fifth Circuit agreed with their contention that there was no jurisdiction" in *Ashford 1*.  Doc. 316, p. 7.  Brown and Filo argue that it is improper to seek reimbursement (through sanctions) for fees charged on the 5th Circuit appeal because appellants prevailed and this court's denial of the motion to remand was vacated.  Doc. 317, p. 8.

The court has already determined that the Respondents succeeded in obtaining the *Ashford 1* remand because of a series of bad-faith misrepresentations they made to both this court and the appellate court.  Doc.  283.  The court will not reiterate those findings here, but the court will note that the appellate court's acceptance of these misrepresentations as true did not convert them into truths or throw a cloak of good faith over them.

In a variation on the theme that they should not be penalized for their good faith arguments, Respondents argue that Brown and Filo's statements have been generally misunderstood and mischaracterized.  Doc. 315, p. 10-14.  Respondents argue that they must have conveyed the essential facts to the Fifth Circuit because that court understood at oral arguments that Porter had agreed to subordinate his claim to the Aeroframe employees' claims.  Doc. 315, pp. 12-13; Doc. 316, p. 7-8.  Aeroframe recites what Filo and Brown said when and to whom regarding the alignment of the parties, concluding, "Nowhere do the parties state that there is not an ***agreement***, in fact, the quoted language above proves otherwise. What the parties state unequivocally is that there is not a ***settlement*** between the parties." Doc. 315, p. 10 (emphasis added).  Aeroframe argues that it is in fact ATS who is being misleading by claiming to have been by mislead by Brown's statements.  Doc. 315, p. 10-11.

The fact that Respondents continue to advance the argument that they never made any misrepresentation prompts a response.  Setting aside Respondents' direct lies to the court that no subordination agreement existed (when in fact it did),[25] the court notes that it is possible to make a truthful statement that is nonetheless misleading.  The term for this phenomenon is "paltering." "Paltering is the active use of truthful statements to convey a misleading impression."  Todd Rogers et al., *Artful Paltering: The Risks and Rewards of Using Truthful Statements to Mislead Others*, 112 J. Personality & Soc. Psychol., 456, 456 (2017).  To the extent that Respondents continue argue that Brown and Filo said the literal truth when they used the word "settlement" rather than the word "agreement," in discussions with this court and the Fifth Circuit about the alignment of the parties, the court now clarifies that paltering will not be tolerated in this court. The duty of candor to the court includes the duty not to palter to the court.

---

[25] *See* Doc. 283 at pp. 7-8.

Finally, Filo and Brown appear to argue that it is irrelevant that they made misrepresentations because the ultimate outcome at the Fifth Circuit would have been the same whether or not ATS had the Cox-Porter retention agreement in hand at the time *Ashford 1* was argued.  In arguing that ATS has not shown that particular expenses were directly caused by attorney misconduct, Filo and Brown argue that "[e]ven if ATS's earlier knowledge of the Cox-Porter Retention Agreement would have been additional evidence for ATS to point to, ATS still would have made the same arguments for removal. ATS therefore has not and cannot show that its '*expenses or costs were caused by*' the conduct of the attorney."  Doc. 317, p. 9 (quoting *Topalian v. Ehrman*, 3 F.3d 931, 937 (5th Cir. 1993)(emphasis original)).

There are two flaws with this argument.  First, Respondents cannot know what the outcome at the Fifth Circuit would have been if they had not made the sanctioned misrepresentations.[26] Second, this argument entirely misses the point of the sanctions recommendation.  Respondents actively misled two courts through their misrepresentations.  Lies to the court—especially ones undertaken under the cloak of attorney-client privilege—take so much effort to uncover that when they are uncovered they must be robustly sanctioned.  *See Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 78-80 (5th Cir. 2011).  To say that misrepresentations were inconsequential because they did not affect the ultimate outcome is to suggest that the duty of candor itself is on a sliding scale. This is part of the reason why the court today recommends that the Respondents be sanctioned "in one fell swoop," as discussed elsewhere in this opinion.  *Goodyear Tire & Rubber Co. v. Haeger*,

---

[26] In our ruling on jurisdiction in *Ashford 2*, we found these parties have been aligned since inception of this litigation, reversing our previous finding to the contrary in *Ashford 1*.  The reversal was prompted by a wealth of information uncovered by ATS while monitoring litigation between Porter and AAR Corporation, a competitor of ATS with whom Porter negotiated sale or takeover of Aeroframe operations while doing the same with ATS.  *See generally Roger Porter v. AAR Aircraft Services, Inc., et al,* 15-cv-02780, United States District Court for the Western District of Tennessee.  Additional information was obtained by ATS when conducting discovery in preparation for hearing of the motion currently before us.  Although our jurisdictional finding in *Ashford 2* was based on the parties' pre-litigation alignment, we did speculate on what effect the June 4, 2014, Cox-Porter Retention Agreement may have had before the Fifth Circuit.  *See Ashford 2*, doc. 62, pp. 21-28, adopted by the district court at doc. 69.

137 S. Ct. 1178, 1187 (2017).  The whole of this unnecessarily multiplied litigation would not have existed if Respondents had undertaken the litigation with the proper deference for this or any other forum and with the proper attention to the duties that should have guided the conduct of Filo and Brown.

    2.    **Respondents argue that ATS has submitted an insufficiently particularized claim for attorneys' fees.**

Relying heavily on *Topalian v. Ehrman*, 3 F.3d 931 (5th Cir. 1993), Respondents argue that the court's sanction award "should be tailored to fit the particular wrong."  *Id.* at 936. Respondents argue that ATS has submitted insufficiently particularized claims for all its attorneys' fees beginning on May 1, 2014, and that this is impermissible because *Topalian* requires ATS to demonstrate a connection between the quantum and the sanctionable conduct.  Doc. 315, p. 14, 17; Doc. 316, p. 4-7; Doc. 317, p. 4-7 ("There is no explanation of how specific acts have had an impact on ATS or how they have made specific legal fees necessary that would not have otherwise been necessary.").

The court reiterates that, under *Goodyear*, "the court can shift only those attorney's fees incurred because of the misconduct at issue," requiring an assessment and allocation of specific litigation expenses, but "[i]n exceptional cases, the but-for standard even permits a trial court to shift all of a party's fees, from either the start or some midpoint of a suit, in one fell swoop." *Goodyear*, 137 S. Ct. at 1186-87.  This litigation was conceived as an attempt to avoid federal jurisdiction by concealing the true alignment of the non-ATS parties, and it progressed via unnecessarily multiplied motion practice designed to wear ATS down.  Respondents have largely neglected the true interests of the former Aeroframe employees such as Mr. Ashford.  The misconduct at issue so thoroughly infects the proceedings that it is near impossible to locate legitimate advocacy in the midst of that misconduct.  The court has reviewed the fee submissions

from ATS, and the court finds that all of the legal fees incurred by ATS from May 1, 2014, onward were caused by the conduct being sanctioned today, as described in the court's original Report and Recommendation on sanctions.  Doc. 283.

### 3.     Respondents argue that ATS unnecessarily drove up litigation costs and failed to mitigate its own damages.

Aeroframe argues that ATS generally failed to mitigate its damages as required by *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 879 (5th Cir. 1988).  Doc. 315, p. 6.  Aeroframe and Porter argue that ATS unnecessarily drove up its own litigation costs by improperly removing all 14 Aeroframe cases to federal court, forcing Respondents to have to litigate jurisdiction.  Doc. 315, pp. 7-8; Doc. 316, pp. 7-8.  Respondents argue that ATS multiplied its own damages by neglecting to issue formal discovery requesting production of the subordination agreement.  *See, e.g.*, Doc. 315, p. 10, 13, 15.  Porter argues that "ATS has admitted that it never made any request for any document referenced by the Somer Brown email," and speculates that if ATS had done its due diligence and asked for that document, it would have been able to present the *Ashford 1* court with more competent jurisdictional evidence, thereby potentially mitigating its damages.[27]  Doc. 316, pp. 8-9.  Brown and Filo note that, "There is no reason for ATS to have not asked for the retention agreement back in 2014. ATS admits now that it never made a discovery request [ . . .] ATS's complete failure to mitigate completely undermines its request for virtually all of its legal fees since 2014."  Doc. 317, p. 9-10.  Aeroframe scornfully argues that "ATS now seeks sanctions for their respective neglect."  Doc. 315, p. 15.

---

[27] This argument is at odds with Filo and Brown's argument that early production of the retention agreement was inconsequential.  They argue, "[e]ven if ATS's earlier knowledge of the Cox-Porter Retention Agreement would have been additional evidence for ATS to point to, ATS still would have made the same arguments for removal. ATS therefore has not and cannot show that its '*expenses or costs were caused by*' the conduct of the attorney."  Doc. 317, p. 9.

The case to which Respondents cite deals specifically with the imposition of sanctions under Fed. R. Civ. P. 11. *Thomas*, 836 F.2d at 879. "A party seeking Rule 11 costs and attorney's fees has a duty to mitigate those expenses, by correlating his response, in hours and funds expended, to the merit of the claims." *Id.* The *Thomas* decision discusses the speed and diligence with which a party must bring a Rule 11 violation to the court's attention, reasoning, "an attorney may not remain idle after a 'motion, pleading, or other paper' filed in violation of Rule 11 by his opponent has come to his attention[,]" because the duty of mitigation "rests on the concept that the victim of a frivolous lawsuit must use reasonable means to terminate the litigation and to prevent the costs of that frivolous suit from becoming excessive." *Id.*

It seems reasonable that the duty to mitigate damages should also apply—to the extent possible—in the context of sanctions under the court's inherent authority. *See, e.g.*, *Carroll v. Jaques*, 926 F. Supp. 1282, 1291 (E.D. Tex. 1996), *aff'd* 110 F.3d 290. But we must also consider that the court exercises its inherent authority to sanction "conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 111 S. Ct. 2123, 2132-33 (1991). A party's ability to mitigate against willful abuse of the judicial system must necessarily be limited.

The court rejects the argument that ATS failed to mitigate its damages, finding instead that ATS's counsel responded appropriately and with diligence and speed to the actions of Respondents. Respondents chose to file 14 identical lawsuits in various jurisdictions, and ATS removed them. The natural consequence of removing multiple actions to a single forum would be to allow for their more orderly disposition. No one (Respondents excepted) could have predicted at the time of removal that subject matter jurisdiction would be contested seven years later, or that Respondents would resort to misrepresentation to defeat federal diversity. It is not possible to

speculate that ATS could have more effectively mitigated its damages when faced with the litigation tactics Respondents employed.

The court finds it extraordinary that Respondents suggest that ATS neglected its duty to mitigate its damages by failing to request the written subordination agreement via written discovery.  To assume that ATS might have turned it up with a well-worded discovery request is to also assume that Respondents would have produced it on request, which this court is not prepared to do, given the determinations we have already made.  Docs. 283, 294.  As discussed in the original Report and Recommendation on Sanctions, the Respondents insisted that there was no such writing in open court to this court and to the Fifth Circuit.  Doc. 283, pp. 7-23.  The court is not convinced that Respondents' duty to respond to discovery would have compelled them to disclose what their duty of candor to the court did not.

**4.      Respondents argue that Rule 11 and 28 U.S.C. § 1927 limit the sanctions' quantum and scope.**

Respondents' briefs discuss on limits placed on the court's ability to impose sanctions under Rule 11 and 28 U.S.C. § 1927.  Doc. 315, p. 6-8, 14; Doc. 316, p. 7; Doc. 317, p. 7.  These arguments fall into three categories:  that sanctions must be limited to fees incurred in this court (not at the Fifth Circuit or in state court), that sanctions under Rule 11 must be tied to particular pleadings, and that sanctions under Section 1927 must be directed only at attorneys, not parties.  Because the latter two arguments do not directly address limitations placed on the court's use of inherent powers, the court does not address these arguments at length.

Respondents cite *Conner v. Travis County*, 209 F.3d 794 (5th Cir. 2000) for the proposition that ATS may not recover for fees incurred in connection with the Fifth Circuit appeal.  Doc. 316, p.7; doc. 317, p. 7.  ATS estimates that approximately $228,000 of the submitted fees were incurred in connection with appellate work, and that *Chambers v. NASCO, Inc.*, 111 S. Ct. 2123, 2132-33

-26-

(1991) rejects the argument that the court cannot impose sanctions for conduct occurring before other tribunals.  Doc. 320, pp. 8-9.  In *Chambers*, the Supreme Court held that, "as long as a party receives an appropriate hearing, as did Chambers, [ . . . ] the party may be sanctioned for abuses of process occurring beyond the courtroom, such as disobeying the court's orders."  *Chambers*, 111 S. Ct. at 2139.

The Fifth Circuit in *Conner* discussed and distinguished *Chambers*, noting that, where activity outside the forum was concerned, the Fifth Circuit limited *Chambers'* reach to those actions undertaken in direct contravention of the forum court's orders:

> *Case* does not directly preclude the district court's sanction award here, as the sanctions directly arose from litigation before the court. Nevertheless, the sanctions do not fit within the example of permissible sanctions which *Chambers* provided: actions taken in another forum "in direct contravention of the District Court's orders."

*Conner v. Travis Cty.*, 209 F.3d 794, 800 (5th Cir. 2000) (quoting *Chambers*, 111 S. Ct. at 2139, and discussing *Matter of Case*, 937 F.2d 1014 (5th Cir.1991).  However, the *Conner* court also described its holding as determination that district court "sanctions on the basis of a frivolous appeal are improper."  *Conner v. Travis Cty.*, 209 F.3d 794, 801 (5th Cir. 2000).

The behavior the court seeks to sanction today is distinct from the discrete litigation decision of undertaking a frivolous appeal.   As detailed in the original Report and Recommendation on sanctions, the court sanctions Respondents' years-long course of conduct based on evidence of bad faith throughout the litigation.  Docs. 283, 294.  These circumstances are different from the limited problem posed by a single meritless appeal—which the appellate court would doubtless be best able to judge—because this sanction award is aimed at a gestalt of bad-faith behaviors that happened to sweep the litigants to the appellate level several times.  For that reason, we conclude that it is appropriate to award sanctions in the amount of fees ATS incurred

at the appellate level because they were incurred as a result of a larger scheme of "abuses of process occurring beyond the courtroom," rather than as a result of a single ill-conceived decision to appeal. *Chambers,* 111 S. Ct. at 2139.

Respondents cite *Foval v. First National Bank of Commerce in New Orleans*, 841 F.2d 126 (5th Cir. 1983) for the proposition that ATS may not recover for fees incurred in state court.  Doc. 315, pp. 7-8, 14; doc. 316, p. 6; doc. 317, p. 7.  ATS asserts in response that,

> ATS is not seeking fees and costs for actions taken by ATS in state court. Rather, as the invoices show and as Mr. Vance states in his Original Declaration (Rec. Doc. 299-1) and testified in his deposition (Rec. Doc. 317-1), ATS is requesting costs and fees starting with its proper removal of cases to federal court in May of 2014.

Doc. 320, p. 5.   The court's review of the submitted invoices confirms that the fee submissions start with ATS's preparations to remove the cases and that ATS does request to recover for fees incurred in connection with activities before the state courts.

## V.
### CONCLUSION

For the reasons set forth in the original Report and Recommendation (docs. 283, 294), and supplemented herein, we conclude and recommend the district court agree that this litigation is the sort of "exceptional case[]" that was litigated by the Respondents "in complete bad faith, so that every cost of [litigating it once the obstructionism began] is attributable to sanctioned behavior." *See Goodyear*, 137 S. Ct. at 1187-88.  The court finds that the Jones Walker law firm was brought into this litigation as a direct result of the unnecessary multiplication of proceedings.  The court further finds that ATS would not have incurred the Jones Walker and Plauché, Smith & Nieset fees commencing on May 1, 2014, but for the sanctionable conduct described in the original Report and Recommendation on sanctions.  Docs. 283, 294.

This conduct includes bad faith actions to deny ATS its right to litigate in a federal forum, including misrepresentations to the court regarding the alignment of the parties and unnecessary multiplication of proceedings by filing 14 separate lawsuits where one lawsuit would do.  It was apparent to the court early on that "[t]his entire litigation has been one huge exercise in bad faith designed to prevent removal engaged in by all non-ATS parties and attorneys Brown and Filo." *Ashford v. Aeroframe Servs., LLC*, No. 2:19-cv-610 ("*Ashford 2*") Doc. 62, p. 29 (W.D. La. May 26, 2020).  The one factor that finding does not include but that would be pertinent at the end of the day is our conclusion that none of the claims of any of the non-ATS litigants against ATS had any merit at all.  *See Ashford v. Aeroframe Servs., LLC*, No. 19-CV-610, 2021 WL 2389381, (W.D. La. Apr. 29, 2021), *report and recommendation adopted,* No. 19-CV-610, 2021 WL 2383912 (W.D. La. June 10, 2021) (granting summary judgment in favor of ATS against non-ATS litigants in consolidated matters).

The court further finds and further suggests the district court agree that ATS's attorneys' fees and costs were reasonably incurred.  An examination of the record shows the quality of the work submitted by ATS's attorneys and the diligence with which it is undertaken.  Having had the opportunity to observe this work on a contemporaneous basis, the court finds it to be high quality and deserving of the hourly rates charged by the firms, which are compatible with the prevailing rates in the Lake Charles area.

The court recommends sanctions today pursuant to its inherent power to do so.  This power is considered inherent because it is among the powers that are necessary to the proper functioning of a court of justice—powers that allow the court to impose order, respect, decorum, and to ensure compliance with lawful orders.

We recommend that judgment be rendered herein in favor of *AVIATION TECHNICAL SERVICES, INC.* jointly and severally against *SOMER BROWN*, *THOMAS A. FILO*, *ROGER A. PORTER*, and *AEROFRAME SERVICES, LLC*, in the full and true sum of *ONE MILLION SEVEN HUNDRED FIFTY-ONE THOUSAND ONE HUNDRED THIRTY-SIX AND 94/100 ($1,751,136.94) DOLLARS*, together with interest under 28 U.S.C. § 1961, running from the date of judgment until paid.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1428–20 (5th Cir. 1996), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1)), *as recognized in Cruz v. Rodriguez*, 828 F. App'x 224, 2020 WL 6478502 (5th Cir. 2020) (unpubl.).

THUS DONE AND SIGNED in Chambers this 4th day of February, 2022.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE