UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| MICHAEL ASHFORD | CIVIL ACTION NO. 14-0992 |
| VERSUS | JUDGE DONALD E. WALTER |
| AEROFRAME SERVICES LLC ET AL | MAGISTRATE JUDGE CAROL B. WHITEHURST |

**MEMORANDUM RULING**

The Court previously adopted a Report and Recommendation (Record Document 283) filed by Magistrate Judge Kathleen Kay ("the Magistrate Judge") recommending sanctions be issued against Somer Brown ("Brown"), Thomas A. Filo ("Filo"), Roger A. Porter ("Porter"), and Aeroframe Services, LLC ("Aeroframe") (collectively, "sanctioned parties") pursuant to a Motion for Sanctions (Record Document 159) filed by Aviation Technical Services, Inc. ("ATS"). See Record Document 294 ("First Report and Recommendation"). Currently pending before the Court is a Report and Recommendation filed by the Magistrate Judge recommending $1,751,136.94 in sanctions against the sanctioned parties ("Final Report and Recommendation"). See Record Document 339.

The sanctioned parties filed objections as to the issuance of sanctions as well as the amount and method of calculation. See Record Documents 345, 346, and 348. Responses thereto have been filed by ATS, in addition to a reply filed by the sanctioned parties. See Record Documents 350, 351, 352, and 355. The parties filed supplemental briefing detailing the amounts of sanctions they believed warranted. See Record Documents 362, 365, and 368. The parties also filed supplemental briefing following the issuance of the United States Court of Appeals for the Fifth Circuit's opinion finding federal jurisdiction existed. See Record Documents 375, 376, and 377.

1

This Court denied the sanctioned parties' two requests for oral argument on their objections. See Record Documents 347, 349, 378, and 381. Finally, ATS submitted additional briefing on the amount of attorneys' fees and costs incurred since August 1, 2021. See Record Document 384. The sanctioned parties filed oppositions to this supplemental briefing, and ATS filed a reply. See Record Documents 385, 386, and 387.

The Court has conducted an independent *de novo* review of the record, including the objections, responses, and briefings filed therein. For the reasons set forth below, the Court **ADOPTS** the factual findings of the Magistrate Judge. Although the Court **CONCURS** with the Magistrate Judge's reasoning for issuing the sanction, the Court **DECLINES TO ADOPT** the additional sanctionable conduct findings and the ultimate recommended amount for the sanctions. For the reasons set forth below, the Court hereby **ORDERS** a sanction award of **$982,891.20** against the sanctioned parties, jointly and severally.

## BACKGROUND

The Court shall not exhaustively restate the factual background of this case. The Court already adopted the factual findings set forth in the First Report and Recommendation. See Record Document 294. The Court further adopts the findings of fact made in the Final Report and Recommendation. Accordingly, the Court will only discuss the relevant procedural background for this matter.

ATS previously filed a Motion for Sanctions. See Record Document 159. ATS moved the Court to issue sanctions against the sanctioned parties[1] for "(1) fraud on the Court, (2) unwarranted

---

[1] The Court acknowledges ATS moved for sanctions against additional individuals not encompassed by the term "sanctioned parties." Because the Court found sanctions against those additional individuals inappropriate (Record Document 294), the Court does not refer to them in this ruling.

2

and vexatious filings to unnecessarily multiply the proceedings, and (3) continuing to assert claims against ATS that have no support in fact or law." Id. at 2. ATS identified the "fraud" as the sanctioned parties' repeated misrepresentations "that there was no agreement by Porter on behalf of Aeroframe to stipulate to [Michael] Ashford's claims and pay Aeroframe's employees out of proceeds recovered from ATS." Record Document 159-1 at 5. As evidence of this fraud, ATS attached a "Contract of Retainer" executed on June 4, 2014 ("Retention Agreement"), which provided in relevant part:

> Client . . . agrees that the claims of all former employees of Aeroframe represented by COX, COX, FILO, CAMEL & WILSON shall take priority over the individual claim of Roger A. Porter and/or Aeroframe against ATS. Roger A. Porter expressly agrees to fund those unpaid wage claims from proceeds received by Aeroframe or Roger A. Porter in the event either Aeroframe or Roger A. Porter receives a recovery before such former employees receive[] recovery.

Record Document 159-2 at 7-8. ATS contended that "[t]his document exposes that a fraud was perpetuated on this Court and ATS" because the sanctioned parties had previously "steadfastly denied the existence of any stipulation to pay the Aeroframe employees['] claims." Record Document 159-1 at 6.

Following a hearing,[2] the Magistrate Judge recommended sanctions pursuant to both the Court's "inherent authority and the local rules."[3] Record Document 283 at 36. The thirty-eight

---

[2] The Magistrate Judge conducted a hearing on the motion for sanctions from May 14, 2019, to May 15, 2019. See Record Documents 259 and 260. At the close of the second day, the Magistrate Judge suspended the hearing on the motion for sanctions to allow the parties to submit additional evidence, if necessary, following the resolution of the motion to remand in Ashford v. Aeroframe Services L L C et al, Civil Docket No. 2:19-cv-00610. The Magistrate Judge concluded the hearing on December 10, 2019. See Record Document 273.

[3] The Court clarifies that it is only issuing sanctions pursuant to its inherent authority. Although the Magistrate Judge cites local rules, these rules are not an independent basis for issuing sanctions but rather act as support for the Magistrate Judge's findings regarding sanctionable conduct. Further, the Magistrate Judge references 28 U.S.C. § 1927, but she later explains that sanctions under that provision were not sufficient to remedy the harm caused by the sanctioned conduct. See Record Document 339 at 12, n. 15. The Court agrees that no other statute or rule would adequately

3

page Report and Recommendation outlined in great detail the sanctionable conduct, identifying what the Magistrate Judge described as "clear evidence of [the sanctioned parties'] bad faith throughout the course of this litigation" and a "willful abuse of the judicial process." Id. at 35. The Magistrate Judge further found the sanctioned parties pursued meritless claims against ATS and unreasonably and vexatiously multiplied judicial proceedings by "filing separate motions and memoranda . . . that all made the same arguments as well as [deciding] to file multiple law suits." Id. The Magistrate Judge deemed sanctions appropriate because of the (1) "willful abuse of the judicial process[,]" (2) "concurrent representation of Porter and [Michael] Ashford[,]"and (3) "[t]he repeated denials of the existence of any type of a writing or agreement despite the existence of the . . . Retention Agreement." Id. at 36-37. This Court adopted the First Report and Recommendation in its entirety. See Record Document 294.

Following another hearing,[4] the Magistrate Judge issued the Final Report and Recommendation. See Record Document 339. In addition to identifying ongoing sanctionable conduct, the Magistrate Judge reiterated the propriety of sanctions.[5] See id. The Magistrate Judge

---

address the sanctionable conduct at issue here. Accordingly, any sanctions imposed must be appropriate pursuant to the Court's inherent authority.

[4] The Magistrate Judge conducted a hearing to determine the appropriate sanction on August 10, 2021. See Record Document 335.

[5] The Magistrate Judge stated:

> In the original Report and Recommendation, we noted that the Respondents made misrepresentations in this court and in the Fifth Circuit that there was "no writing" demonstrating that they were all aligned despite a written agreement. . . . We also found that the Respondents had engaged in forum shopping by filing "multiple lawsuits against the same defendants alleging identical causes of action" in several different parishes. Id., p. 35. Those actions constituted "unreasonable and vexatious multiplication of the proceedings" entitling ATS to costs, expenses, and attorney fees under 28 U.S.C. § 1927. Id. We additionally recommended sanctions due to the parties' violation of Rule 3.3 and Rule 1.7 of the Louisiana Rules of Professional Conduct, which are incorporated into the Western District of Louisiana's Local Rules through Rule 83.2.4. Id., pp. 36-37. Notably, we made an explicit finding that

4

attributed the entirety of the "unnecessarily multiplied litigation" to the sanctionable conduct. Id. at 23. Therefore, the Magistrate Judge recommended levying ATS's legal fees against the sanctioned parties, stating:

> [T]he Court finds that Respondents' actions in this case—and in the 14 identical lawsuits filed in various courts—embody the type of exceptional litigation which justifies the shifting of all or a portion of a party's fees "in one fell swoop" because the entire course of conduct of the Respondents was part of a sordid scheme to deprive this court of subject matter jurisdiction, deny ATS the forum of its choice, impede this court's ability to manage its own affairs expeditiously, and hamstring ATS by forcing it to defend against unnecessarily multiplied proceedings that were meritless.

Id. at 15-16. The Magistrate Judge concluded that the recommended sanction was "the least restrictive means of correcting this ongoing behavior and compensating ATS for needlessly generated litigation expenses." Id. at 8.

The sanctioned parties have filed multiple objections to the Final Report and Recommendation and ATS's supplemental fee submissions. These objections challenge both the propriety and quantum of sanctions. See Record Documents 345, 346, 348, 355, 362, 368, 375, 377, 385, and 386. In response, ATS argues that the objections are either without merit or waived. See Record Documents 350, 351, 352, 365, 376, and 387.

## LAW AND ANALYSIS

**I.  Propriety of Sanctions.**

This Court previously found sanctions are appropriate against the sanctioned parties. See Record Document 294. Although the sanctioned parties urge this Court to revisit its prior adoption

---

the Respondents had acted in bad faith "throughout the course of this litigation" and that the entire litigation was pursued solely for the benefit of Porter, Aeroframe, Filo, and Brown.

Record Document 339 at 12-13.

5

and refer the Court to cases regarding the propriety of sanctions, they cite no explicit legal ground for reviewing the prior decision. Accordingly, the Court will only revisit its prior adoption if that adoption "was erroneous, is no longer sound, or would work an injustice." Loumar, Inc. v. Smith, 698 F.2d 759, 762 (5th Cir. 1983).

The sanctioned parties challenge the propriety of sanctions on several grounds: (1) lack of jurisdiction, (2) the Magistrate Judge's alleged bias, (3) their allegation that they made no misrepresentation, (4) lack of due process, and (5) Porter's death.[6] Only the objections related to due process and the misrepresentation merit discussion.

### a. Misrepresentation.

Throughout their objections, the sanctioned parties consistently maintain they did not make a misrepresentation to this Court by saying no settlement agreement exists. See e.g. Record Document 375. The sanctioned parties interpret the Fifth Circuit's recent decision and actions by

---

[6] Some of these objections were not raised before the Magistrate Judge and thus are not properly before the District Court. See Finley v. Johnson, 243 F.3d 215, 219, n.3 (5th Cir. 2001). However, the Court shall briefly discuss even the waived objections to assuage the sanctioned parties' concerns and as necessary to address intervening changes in law and fact.
   The sanctioned parties' jurisdictional arguments are moot in light of the Fifth Circuit finding that this Court has subject matter jurisdiction. See Record Document 374. Further, the sanctioned parties have not demonstrated bias on the part of the Magistrate Judge. When the identified statements and actions of the Magistrate Judge are viewed in context, it becomes apparent that she was neither actually nor presumptively biased such that the sanctioned parties were deprived of a fair proceeding. Especially telling is the fact that none of the sanctioned parties moved to recuse the Magistrate Judge at any point. Finally, the objection relating to Porter's death is not properly before the Court. Because Porter's death extinguished any existing attorney-client relationship, Porter's previous counsel may not file this objection on his behalf. See Cheramie v. Orgeron, 434 F.2d 721, 725 (5th Cir. 1970); Greene v. Demoss, No. 3:20-CV-00578, 2021 WL 11085597, at *2 (W.D. La. Feb. 4, 2021). Nor may Porter's previous counsel file an objection on behalf of Porter's estate because Porter's estate has not been substituted as a party in this action. Worth noting is Porter's previous counsel's failure to take corrective action to properly file an objection despite the Magistrate Judge's order informing him that he lacks authority to act on Porter's behalf. See Record Document 375.

this Court to confirm the lack of a settlement agreement. Therefore, they maintain they cannot be sanctioned for making a factually true statement.

Despite the sanctioned parties' contentions, recent actions do not confirm the lack of a settlement agreement. When the Fifth Circuit reached its most recent decision, it expressly declined to consider whether a settlement existed because it resolved the issue of federal jurisdiction on alignment. See Record Document 374-1 at 19-20. Further, the Fifth Circuit did affirm "the individual judgments against Aeroframe in favor of the employees whose appeals we have not dismissed." Id. at 21. However, a careful reading of those individual judgments directly refutes the sanctioned parties' contention that this Court agrees no settlement existed—indeed, the Magistrate Judge emphasized the existence of an agreement between Aeroframe, Porter, and the plaintiffs.[7] Nothing in those judgments undercuts the Court's decision to issue sanctions.

Even if this Court were to assume the Retention Agreement does not constitute a settlement, sanctions would still be appropriate. The record demonstrates that the sanctioned parties'

---

[7] The Magistrate Judge stated:

> Never pushed forward by plaintiffs' counsel and still supposedly unresolved were the claims of the plaintiff-employees against Aeroframe. We say "supposedly unresolved" because we had already concluded in *Ashford 1* and *Ashford 2* that there never did exist any real conflict between the employees and Aeroframe. Money was owed to the plaintiff-employees. No one denied that, but all knew Aeroframe had no money to pay. What plaintiffs were owed was no mystery and Porter, on behalf of Aeroframe, had agreed to honor those claims. Not only did Porter steal the labor of these plaintiff-employees but he worked with Filo and Brown to use them as tools to effectuate their plan aimed at deep pocket ATS.

Barreda et al. v. Aeroframe Services LLC et al; Civil Docket No. 2:14-cv-02538, Record Document 102 at 7-8. After some of the plaintiffs submitted affidavits establishing the money owed to them, the Magistrate Judge recommended summary judgment in their favor. See id. at 17-23.

statements were not always limited to the existence of a "settlement agreement" or lack thereof.[8]

As but one example, the Court emphasizes here a statement made by Brown in the hearing on the motion to remand. At this hearing, Brown testified:

> I didn't have authority to speak on behalf of Roger Porter. And there is not one written settlement agreement, stipulation, nothing indicating that Mr. Porter agrees to what I suggest he is agreeing to in my email.[9] The fact is he's agreed to prioritize the employee claims since the beginning of time.

Record Document 44 at 64. This statement was identified by both the Magistrate Judge (Record Document 283 at 7) and ATS (Record Document 159-1 at 13) and is in direct contravention of the Retention Agreement. The Retention Agreement demonstrates a written agreement by both Porter and Aeroframe to prioritize the employees' claims. Clearly, then, there did exist at least one "written settlement agreement, stipulation," or something "indicating that Mr. Porter agrees to what I suggest he is agreeing to in my email." Record Document 44 at 64.

The record further demonstrates the sanctioned parties were not sanctioned *only* for denying a settlement agreement existed. ATS moved for sanctions on three grounds: fraud on the Court, unwarranted and vexatious filings, and asserting claims with no support in law or fact. See Record Document 159 at 2. The Magistrate Judge recommended sanctions for willful abuse of the judicial process, improper concurrent representation, and "repeated denials of the existence of any type of a writing or agreement despite the existence of the . . . Retention Agreement." Record Document 283 at 36-37. Thus, the alleged misrepresentations were not the only basis for sanctions.

---

[8] The Magistrate Judge identified several misrepresentations in the First Report and Recommendation. See Record Document 283.

[9] The e-mail states that the employees' "entitlement to wages, penalties, and attorney's fees will be stipulated to by Aeroframe." Record Document 257-40 at 3. Brown further states that Porter "has agreed to stipulate in writing that … his clients [sic] will be paid first out of any monies that he collects." Id.

8

Nor were the sanctioned parties sanctioned specifically for denying a settlement agreement existed. The Magistrate Judge took great care in explaining this point to the sanctioned parties.[10]

Let this Court be clear once more. It is not issuing sanctions because the sanctioned parties misrepresented whether a "settlement" existed. Part of the basis for sanctions is that the sanctioned parties knew a written agreement existed, yet they continued to assert it did not exist. By continuing to contest the existence of this agreement, the sanctioned parties extended this litigation for several years. Unequivocally, such conduct constitutes bad faith of the parties and willful abuse of the judicial process. It is this conduct the Magistrate Judge scrutinized in her Report and Recommendations, and it is this conduct the Court found warranted sanctions pursuant to its inherent authority. Therefore, this objection does not present a valid basis for reconsidering the propriety of sanction.

b. **Due Process Concerns.**

When issuing sanctions pursuant to the Court's inherent authority, the Court "must comply with the mandates of due process." Chambers v. NASCO, Inc., 501 U.S. 32, 50, 111 S. Ct. 2123, 2136 (1991). Due process requires "fair notice and an opportunity for a hearing on the record." Roadway Exp., Inc. v. Piper, 447 U.S. 752, 767, 100 S. Ct. 2455, 2464 (1980). "Notice is fair if it is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action.'" CEATS, Inc. v. TicketNetwork, Inc., 71 F.4th 314, 323 (5th Cir. 2023) (quoting Armstrong v. Manzo, 380 U.S. 545, 550, 85 S. Ct. 1187, 1190 (1965)). Further, the opportunity to be heard has been likened to "[t]he opportunity to present reasons, either in person or in writing, why proposed action should not be taken." McClenny Moseley & Assocs., P.L.L.C., v. Equal

---

[10] See Record Document 283 at 26 ("Regardless of whether [the Retention Agreement] constitutes a settlement of the claims of the non-ATS litigants, it is nevertheless an agreement and it is in writing rendering those arguments patently false.").

Access Justice Fund, L.P., No. 23-30670, 2024 WL 2874371, at *2 (5th Cir. June 7, 2024) (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546, 105 S. Ct. 1487, 1495 (1985)). For example, in CEATS, Inc., certain individuals learned they were being sanctioned when they received the order issuing sanctions. See CEATS, Inc., 71 F.4th at 324. Even though the CEATS, Inc. parties had testified at the evidentiary hearing, they thought they were testifying as witnesses. See id. The Fifth Circuit found the individuals were deprived of their due process right to a hearing because they "learned that they *might* face sanctions at the same time that they learned that they *would* face sanctions." Id. (emphasis in original).

Here, the sanctioned parties make three primary arguments regarding due process: (1) they were only put on notice of sanctions regarding the misrepresentation, (2) the additional sanctionable conduct findings by the Magistrate Judge in the Final Report and Recommendation violated their due process rights, and (3) adding ATS's legal fees from August 1, 2021, through August 31, 2024, and from Ashford II[11] would violate the sanctioned parties' due process rights. The first contention is easily dispensed with—ATS identified three grounds of sanctionable conduct, the sanctioned parties attended a three-day hearing for sanctions and were able to defend themselves, and the Magistrate Judge issued her First Report and Recommendation based on the motion and the hearing. It cannot be rationally said that the sanctioned parties only had notice about the alleged misrepresentation and can only be sanctioned for same. The sanctioned parties can be (and were) sanctioned for the conduct outlined in the motion for sanctions, discussed at the evidentiary hearing, and analyzed in the First Report and Recommendation. They received all the due process to which they were entitled for those sanctions.

---

[11] Ashford II is shorthand for Ashford v. Aeroframe Services L L C et al, Civil Docket No. 2:19-cv-00610. Ashford II began when ATS removed the claim following the Fifth-Circuit mandated remand.

Similarly, any sanction award including fees for work performed in Ashford II would not necessarily implicate the sanctioned parties' due process rights. The initial motion for sanctions was filed prior to inception of Ashford II but that motion identifies specific misconduct this Court later found sanctionable. The Magistrate Judge was then tasked with determining an appropriate sanction for that misconduct. Prior to an evidentiary hearing on that issue, ATS filed fee submissions which included work completed in Ashford II. At that time, the sanctioned parties were on notice that the Court may consider including those fees as part of its sanctions award, and, in fact, counsel for Aeroframe, Filo, and Brown objected to the inclusion of these fees in their supplemental oppositions and at the evidentiary hearing. See Record Documents 331 at 2, 332 at 1, and 335 at 15. Therefore, the record demonstrates the sanctioned parties had both notice and an opportunity to be heard on the inclusion of these fees, so any inclusion of those fees would not violate their due process rights.

However, the additional conduct findings in the Final Report and Recommendation are more complicated. The Magistrate Judge identified two further grounds for sanctions: (1) the sanctioned parties insisted "without foundation that they have been prevented from conducting reasonable discovery[,]" and (2) the sanctioned parties continued to file separate motions and memoranda that made the same arguments. Record Document 339 at 3 and 6. This conduct was not identified in the original motion for sanctions because it transpired after the issuance of the First Report and Recommendation. The first time the sanctioned parties received notice that they may be sanctioned for this conduct was in the Final Report and Recommendation. Sanctions for this conduct would arguably violate the sanctioned parties' right to due process. Therefore, the Court declines to adopt the portion of the Final Report and Recommendation making additional

11

sanctionable conduct findings.[12] Any fees related to that conduct will not be included in the sanction award. Nor will this Court include any sanctions for the additional misconduct identified by ATS in its latest briefing (Record Document 384) because any such sanctions would likewise violate the sanctioned parties' due process rights.

For similar reasons, the Court finds that any sanctions award including fees for work performed after July 31, 2021, would violate the sanctioned parties' due process rights. The sanctioned parties participated in a hearing and presented their arguments against sanctions for fees incurred prior to July 31, 2021, but they have not had notice or a hearing on any fees incurred after that date.[13] Any fees related to that conduct will not be included in the sanction award.

**II.     Quantum of Sanctions.**

"Federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" Goodyear Tire & Rubber Co. v. Haeger, 581 U.S. 101, 107, 137 S. Ct. 1178, 1186 (2017) (citing Link v. Wabash R. Co., 370 U.S. 626, 630-631, 82 S. Ct. 1386, 1389 (1962)). Courts may use this authority "to fashion an appropriate sanction for conduct which abuses the judicial process," but use of this power "must be exercised with restraint and caution." Chambers, 501 U.S. at 44-45, 111 S. Ct. at 2132-33. This is so because "[t]he threshold for the use of the inherent power sanction is high." Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc., 86 F.3d 464, 467 (5th Cir. 1996).

---

[12] For this reason, the Court finds it excusable that the sanctioned parties did not object to sanctions on these grounds in the proceedings before the Magistrate Judge. The Court further notes that CEATS, Inc. and McClenny Moseley & Assocs., P.L.L.C., which were issued after the Report and Recommendations, clarified what due process is required.

[13] The Court will not hold a third evidentiary hearing on the issue of sanctions to address the inclusion of these fees. After over ten years of litigation and two different evidentiary hearings on sanctions alone, the Court has enough facts before it to fashion an appropriate sanction.

In Topalian v. Ehrman, 3 F.3d 931 (5th Cir. 1993), the Fifth Circuit enumerated four factors a federal court should consider when fashioning an appropriate sanction.[14] Topalian, 3 F.3d at 937. These factors are:

> (1) What conduct is being punished or is sought to be deterred by the sanction?
>
> . . .
>
> (2) What expenses or costs were caused by the violation of the rule?
>
> . . .
>
> (3) Were the costs or expenses 'reasonable,' as opposed to self-imposed, mitigable, or the result of delay in seeking court intervention?
>
> . . .
>
> (4) Was the sanction the least severe sanction adequate to achieve the purpose of the rule under which it was imposed?

Id. (emphasis omitted).

Here, the sanctioned parties contend the Magistrate Judge did not properly apply the Topalian factors and assert that a proper application of those factors would result in a substantial reduction to the amount of sanctions imposed.[15] See e.g. Record Document 362. The Court has

---

[14] Topalian is a Rule 11 case, but the Fifth Circuit clarified in a footnote that these principles should "apply across-the-board to all of the district court's sanction powers." Topalian, 3 F.3d at 936, n.5. Other district courts have relied on these factors when determining an appropriate sanction pursuant to their inherent authority. See Carroll v. Jaques, 926 F. Supp. 1282, 1291 (E.D. Tex. 1996), aff'd sub nom. Carroll v. Jaques Admiralty L. Firm, P.C., 110 F.3d 290 (5th Cir. 1997); Diamond Consortium, Inc. v. Manookian, No. 4:16CV94-ALM, 2017 WL 3301527, *9 (E.D. Tex. Aug. 3, 2017); Keplar v. Google, LLC, 346 F.R.D. 41, 55 (N.D. Tex. 2024). Therefore, even if analysis of the Topalian factors is not strictly required in the inherent authority context, the Court finds its principles instructive and will consider them in fashioning an appropriate sanction.

[15] Additionally, in their latest briefing, the sanctioned parties argue, for the first time, that ATS has not identified a single expense actually paid by ATS, as opposed to its insurer, and thus, compensation would be improper. See Record Documents 385 and 386. This argument is based on a deposition from 2021 and is clearly waived at this point. The Court will not consider it. See Finley, 243 F.3d at 219, n.3.

carefully reviewed the Report and Recommendations (Record Documents 283 and 339), ATS's fee submissions, the docket, and the factual record. This review demonstrates that the Magistrate Judge considered the Topalian factors in determining her recommended sanction award.[16] However, the Court finds that reductions are necessary to ensure that the sanction is the least severe sanction adequate to achieve the desired result. The Court agrees that imposing attorney's fees jointly and severally seems the only sanction adequate to compensate the harms and to deter any ongoing or future misconduct,[17] but a sanction for the entirety of ATS's legal fee submissions is not the least restrictive sanction in these circumstances.

Accordingly, the Court hereby **ORDERS** a sanction award of **$982,891.20**, together with interest under 28 U.S.C. § 1961, against the sanctioned parties, jointly and severally.[18] This reduction accounts for the due process concerns outlined above and for the improper use of block billing. This award further excludes costs and fees related to normal litigation activities, appeals, a subpoena in a Tennessee lawsuit, Neathammer v. Aeroframe Services, LLC, No. 16-cv-1397, Jackson v. Aeroframe Services, LLC, No. 16-cv-1378, and Ashford II. The Court finds that this

---

[16] The Magistrate Judge did not explicitly go factor by factor in her analysis, but that is not necessary. In Topalian, the Fifth Circuit stated an order for sanctions need not be hundreds of pages long and "full of minutiae and detailed factual findings." Topalian, 3 F.3d at 938, n.7. A judge is required to "provide some avenue for [the reviewing court] to trace his reasoning and review his exercise of discretion." Id. The Magistrate Judge's findings do just that.

[17] For example, dismissal of the lawsuit can no longer be done because the Court has rendered a final judgment closing this case. See Record Document 313. Indeed, no party has suggested any type of sanction that could remedy the harm here other than attorney's fees, and an award of attorney's fees would compensate ATS for the time and resources it expended because of the sanctionable conduct. Further, the Court agrees with the Magistrate Judge that the sanction should be levied against the sanctioned parties jointly and severally. See Record Document 339 at 16.

[18] The Court thoroughly reviewed the relevant fee submissions. When implementing these reductions, the Court considered its overall sense of the litigation and used estimates rather than going line-by-line. See Goodyear Tire, 581 U.S. at 109-110, 137 S. Ct. at 1187 (noting that a court need not "become green-eyeshade accountants" and is tasked only with doing "rough justice, not to achieve auditing perfection") (citing Fox v. Vice, 563 U.S. 826, 838, 131 S. Ct. 2205, 2216 (2011)).

sanction is necessary to correct the abuse of the judicial process outlined herein and to compensate ATS for the losses it sustained because of that sanctionable conduct. The Court further finds that no lesser sanction would have the desired effect and that this award is therefore the least restrictive sanction adequate to carry out the purpose.

## CONCLUSION

For the foregoing reasons, the Court **ADOPTS** the factual findings of the Magistrate Judge set forth in the Report and Recommendation (Record Document 339). Although the Court **CONCURS** with the Magistrate Judge's reasoning for issuing the sanction, the Court **DECLINES TO ADOPT** the additional sanctionable conduct findings and the ultimate recommended amount for the sanction. Accordingly,

**IT IS ORDERED** that judgment be and hereby is rendered herein in favor of **AVIATION TECHNICAL SERVICES, INC.** jointly and severally against **SOMER BROWN**, **THOMAS A. FILO**, **ROGER A. PORTER**, and **AEROFRAME SERVICES, LLC**, in the full and true sum of **NINE HUNDRED EIGHTY-TWO THOUSAND EIGHT HUNDRED NINETY-ONE AND 20/100 ($982,891.20) DOLLARS**,[19] together with interest under 28 U.S.C. § 1961, running from the date of judgment until paid.

THUS DONE AND SIGNED at Shreveport, Louisiana, this the 18th day of November, 2024.

_____
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE

---

[19] See Doc. 327.